WESTERN STORAGE & WAREHOUSE COMPANY v.
  GLASNER et al., Plaintiffs in Error; SMITH et al.,
  Defendants in Error.

### Division One, May 21, 1902.*

1. **Usury:** INTEREST: COMPOUNDED SEMIANNUALLY. The compounding of interest oftener than once a year is prohibited by the statute, but does not make void the mortgage or pledge securing the loan, but simply makes that provision of the contract void.

2. ————: COMMISSIONS. If more than eight per cent per annum was paid by the borrowers for the use of money, for instance, if two per cent additional was paid as commissions or brokerage to the agent making the loan, the contract, under the present statute, was usurious.   And a pledge of goods to secure the payment of such loan, is void.   Nor is the contract's usurious character altered by the fact.

*Decided March 29, 1902.   Opinion modified May 21, 1902.

that the lender received no part of the commissions and knew nothing of the excessive charge, if his agent who made the loan had full power to act for him and to lend the money without consulting him, for then the act of the agent became his act.

3. ———: PLEADED BY CREDITORS: ESTOPPEL. The mortgagees in a second mortgage are creditors of the mortgagor, and, hence, as interpleaders in a replevin suit for the possession of the property, can plead usury for the purpose of defeating a prior pledge of the same property to other creditors of the mortgagor.

4. ———: ———: ———: RECOGNITION OF PRIOR LIENS. A recital in a second mortgage that it is subject to all outstanding liens, charges and claims, does not estop the mortgagee from denying the validity of a prior pledge of the same property as being usurious. Such mortgagee stands as to such plea in the shoes of the original pledger, and being his creditor, he is with him in representation a privy, and as such pledger could invoke the defense of usury against the validity of the lien, so can he.

5. Replevin: SALE OF GOODS. One who gets hold of property by a writ of replevin has no right to sell it during the pending of that suit. The court has the right, in case such party fails to establish his legal right to such property, to order him to bring it or its market value at the sale into court. And the price paid by some of the mortgagees under an agreement with the others to purchase it for them, is not conclusive as to its value.

Error to Clay Circuit Court.—*Hon. E. J. Broaddus,* Judge.

REVERSED AND REMANDED *(with directions).*

*Hamner & Hamner* for plaintiffs in error.

(1) (a) The court refused to let appellants prove the value of the ninety-five barrels of whiskey in question, at the time the second mortgage was given, or at the time S. J. Smith took it, or at the time of the trial, but allowed the value of it to be proved only at the date S. J. Smith sold it at auction. The evidence proposed as to the value the day S. J. Smith took it, was material, and to exclude it was error, because Smith's pledge was void for usury, and by her taking it there

was a conversion, and what it was worth then was the measure of damages. (b) The second mortgage, under which appellants claimed the ninety-five barrels of whiskey, has this clause in it, "subject to outstanding liens and charges against same." Appellants asked J. Barzen, one of the firm of Glasner & Barzen, if the appellants agreed to accept their mortgage subject to any claim that was invalid in law or on account of usury, meaning the illegal claim of S. J. Smith, and the court refused to let the witness testify. This was error, as the court decided the case on the theory that this clause in the second mortgage forced appellants to take the ninety-five barrels of whiskey subject to the pledge to Smith, even if there was usury, on the principle that a mortgagee could not enlarge his rights, under the mortgage, even if a prior pledge was usurious, and that is the claim made by defendant Smith in this cause. (2) Under the undisputed facts, the court erred in not declaring the Smith loan usurious and the pledge of the warehouse receipt for the ninety-five barrels of whiskey void. (3) The $2,200 note was usurious on its face, it being conceded the first four months interest at eight per cent outside the two per cent bonus was paid, then if compounded semiannually at eight per cent, the interest exceeded eight per cent per annum. The note reads, "interest payable semiannually and if not so paid, to be compounded." This could not mean anything else than compounded semiannually. (4) If usury proved rendered Smith's pledge void, then the court should have granted a new trial. If not, then the court was right in not granting a new trial. Appellants claim that the court was wrong in its idea of the law, and that there being no contradictory evidence, and the law being clear that a creditor of an insolvent debtor can set up the usury, then this court should reverse this judgment and render judgment for appellants here, for whatever it may find from the evidence the whiskey was worth, even at its lowest estimate, $7,175, or at the price Smith realized on it at the public sale thereof. Coleman v. White, 69 Mo.

App. 530; Rubber Co. v. Cunningham, 55 Mo. App. 656; Voorhis v. Staed, 63 Mo. App. 370; Loan Co. v. Baker, 54 Mo. App. 79; McLaren v. Clark, 7 S. E. 250; Brooks v. Todd, 4 S. E. 156; Trust Co. v. Burton, 74 Wis. 329; Meyer v. Cook, 85 Ala. 417; Stien v. Swenson, 44 Minn. 218; Carow v. Kelley, 59 Barb. 239.

*Botsford, Deatherage & Young* and *Dobson & McCune* for defendants in error.

(1) The fact that the note for $2,200 given by Oliver & O'Bryan to Mrs. Smith provided for the payment of interest semiannually, and if not so paid to be compounded, did not render that note usurious. There is nothing in either of the statutes on pages 170 and 171, Laws 1891, which relates to the charge of compound interest. The subject of compound interest is regulated by section 5977, Revised Statutes 1889, which avoids all charges of compound interest when made oftener than once in a year. Such a charge can not be maintained as usurious. (2) The loans in controversy to Oliver & O'Bryan from Mrs. Smith were not usurious. The full amount of the loans were paid to the borrower and the legal rate of interest only charged for the loan. There was a separate amount paid by Oliver & O'Bryan to Hoyt individually for his services in examining the records of chattel mortgages and in securing the Smith and Andrews loans, in looking after the securities, and in looking after the seven renewals of the two Smith notes, which were to take place. According to the authorities cited below, the fact of Hoyt's receiving a commission or compensation for his services in procuring the Smith and Andrews loans and in the examination of the securities would not infect the loan with usury, even if Mrs. Smith had known that Hoyt received such commission or compensation, the amount charged and secured by Hoyt being neither exorbitant nor unreasonable for the amount of his services.

Landis v. Saxton, 89 Mo. 375; 1 Jones, Mort., sec. 642; Still-
man v. Northrup, 109 N. Y. 473; Call v. Palmer, 116 U. S.
98; Cox v. Insurance Co., 113 Ill. 382; Smith v. Wolf, 55
Iowa 555; Atchison v. Chase, 28 Minn. 211; cited with appro-
val in 89 Mo. 380; Webb on Usury, secs. 81, 82 and 89.   (3)
The lender's consent to the usury will not be presumed from
the fact that her agent is her husband.   Webb on Usury, secs.
89 and 90, pp. 99 and 100; Brigham v. Meyer, 51 Iowa 397.
Even if it can be conceded that as between Hoyt on the one
hand and Oliver & O'Bryan on the other, the loan was usur-
ious, still the consent of Mrs. Smith to that usury can not be
presumed from the fact that Hoyt was her brother.   (4)   The
word "void" in the Missouri statutes relating to usurious con-
tracts, was not designed to render the contract absolutely and
utterly void, but only voidable at the option of the debtor.
Ewell v. Daggs, 108 U. S. 143; Zellner v. Mabley, 85 Ga.
749; Webb on Usury, secs. 287 and 388.   (5)   The appel-
lants in this case can not recover because their mortgage was
subject to the mortgage to the Monarch Company and Patter-
son, and as the appellants took an assignment of the Monarch
Company and Patterson mortgages without taking an assign-
ment of the debts secured by the Monarch Company and Pat-
terson mortgages, appellants obtained nothing by that assign-
ment.   It is well settled that the assignment of the mortgage
without an assignment of the mortgage indebtedness, trans-
fers nothing.   Pickett v. Jones, 63 Mo. 195.   (6)   Notwith-
standing the statute declares the usurious contract or security
absolutely void, it is really voidable only; as the borrower may
affirm it, and he may affirm it if he be a mortgagor or pledgor
by selling or mortgaging the mortgaged property subject to the
usurious mortgage.   Sands v. Church, 6 N. Y. 347; Hartley
v. Harrison, 24 N. Y. 170; Bank v. Com. W. Co., 49 N. Y.
643; Green v. Kemp, 13 Mass. 515; 1 Jones on Mort., secs.
744 and 745; 2 Jones on Mort., sec. 1493; Griebel v. Im-
boden, 158 Mo. 632; Vette v. Geist, 155 Mo. 34.   As in this

case the two mortgages to Patterson and appellants were made by the mortgagors, Oliver & O'Bryan, subject to the outstanding claims and liens to Mrs. Smith on the whiskey pledged to her, those mortgagees are bound thereby and appellants can not defeat Mrs. Smith's title to the whiskey by proof of usury in the debt, for which her security was given. Tuite v. Stevens, 98 Mass. 305; Maher v. Sanfrom, 86 Ill. 519; Bank v. Bank, 123 Ill. 510; Lea v. Feansher, 21 W. Va. 108; Pritchell v. Mitchell, 17 Kan. 355; Ready v. Huebner, 46 Wis. 692; American Rubber Co. v. Wilson, 55 Mo. App. 656; White v. Quinlan, 30 Mo. App. 63; Pollock v. Douglas, 56 Mo. App. 491; Mead v. Mabry, 62 Mo. App. 557; Webb on Usury, sec. 374; Loan Assn. v. Winans, 60 S. W. 825; Young v. Evans-Snyder-Buell Com. Co., 158 Mo. 395.

MARSHALL, J.—This is a bill of interpleader. The case made is this: Oliver & O'Bryan were wholesale liquor dealers in Kansas City. Mrs. S. J. Smith is a resident of Connecticut, and for years has been lending money in Kansas City, through her brother, B. Hoyt, who had full power to act for her, and in many cases, as in this instance, made loans for her without her knowledge. On June 6, 1893, Oliver & O'Bryan borrowed $1,600 from Mrs. Smith, through Hoyt, and on June 8, 1893, they borrowed $2,200 more. The $1,600 loan was for ninety days, with interest from maturity. The $2,200 was for four months, with interest at the rate of eight per cent per annum, payable semiannually, and if not so paid to be compounded. The $1,600 note was secured by the pledge of a warehouse receipt issued by the Western Storage and Warehouse Company for forty barrels of whiskey stored with said company by Oliver & O'Bryan and owned by them. The $2,200 note was secured by a similar receipt for fifty-five barrels of whiskey.

At the time these notes were given, Hoyt agreed that, although they purported to be payable in ninety days and four

months, respectively, they should be renewed from time to time as they fell due, so that the loans should stand for one year. As compensation for his services in making said loans, examining the title and the whiskey, and attending to the proposed renewals, Hoyt charged and Oliver & O'Bryan paid a sum equal to two per cent of the amount loaned. The interest, at the rate of eight per cent per annum, from the date to the maturity of these notes, was deducted from the amount specified in the notes, when the loan was made. Mrs. Smith never paid her brother anything at any time for acting as her agent in lending her money. He got his pay from the borrowers.

Thereafter, on March 13, 1894, Oliver & O'Bryan gave a chattel mortgage on all of said ninety-five barrels of whiskey (with other security named) to Robert S. Patterson and the M. N. Monarch Company, to secure certain indebtedness due by Oliver & O'Bryan to them. This mortgage recited that as to the whiskey aforesaid, the mortgage was "subject to claims, charges and outstanding liens against said whiskey."

On the same day, March 13, 1894, Oliver & O'Bryan gave a second chattel mortgage on the same whiskey (and other property) to the plaintiffs in error, Glasner et al., to secure what they owed them. This mortgage also, after describing this whiskey, contained a provision that the mortgage was "subject to claims, charges and outstanding liens against said whiskey," and also that it was subject to the first chattel mortgage to Patterson and the Monarch Company. Afterwards, Patterson and the Monarch Company, for value, assigned their claim to the whiskey to one of the plaintiffs in error (acting for them all) who was also one of the beneficiaries under the second mortgage, subject, however, to the second mortgage.

Oliver & O'Bryan were unable to meet their obligations, so on May 18, 1894, the holders of the second mortgage began a replevin suit, without bond, against the storage company to recover possession of the whiskey. Thereafter, on June 7,

1894, Mrs. Smith began a replevin suit, for the whiskey, against the storage company. She gave bond, took the whiskey and sold it.

When the first replevin suit came on for trial, and when it appeared to the court that there were two replevin suits pending against the storage company, for the same whiskey, the court stopped the trial of the replevin suit, and ordered the storage company to file a bill for an interpleader against Mrs. Smith and the holders of the second mortgage, the plaintiffs in error herein.

This was done, and this is the case now at bar. Mrs. Smith claims title by virtue of the pledge to her of the warehouse receipts for the whiskey. The holders of the second mortgage, Glasner et al., claim title under their mortgage, and claim that Mrs. Smith's loan was tainted with usury, which renders her pledge void under the statute. To parry this, Mrs. Smith claims, first, that the two per cent paid to her brother was only a reasonable compensation to her brother for his services, with which she had nothing to do, and, hence, there is no usury and her pledge is not void; and, further, that the holders of the second mortgage can not be heard to plead usury because they expressly took their mortgage "subject to claims, charges and outstanding liens against said whiskey."

The trial court entered judgment for Mrs. Smith, discharged the storage company with an allowance for its attorneys and for storage, and Glasner and others appealed.

I.

Usury.

The plaintiffs in error claim that the loan by Mrs. Smith to Oliver & O'Bryan was tainted with usury, and, hence, the pledge of the warehouse receipts to her was void, and, therefore, they have a complete title to the whiskey by virtue of

their second mortgage, which became the first lien by the re-
lease to them of the first mortgage.

This claim is based upon two grounds: first, that the bor-
rowers paid Mrs. Smith interest at the rate of eight per cent
per annum upon the whole loan, and they also paid Hoyt two
per cent additional, which made the interest ten per cent, an
amount in excess of the legal rate (sec. 3706, R. S. 1899), and
made the pledge securing the loan invalid and illegal, under
section 3706, Revised Statutes 1899; and, second, that the
$2,200 note provided for compounding the interest every six
months, contrary to section 3711, Revised Statutes 1899,
which prohibits the compounding of interest oftener than
once a year, and, therefore, the loan is usurious and the pledge
void.

The compounding of interest oftener than once a year
is prohibited by the statute. But a violation of this provision
does not make the mortgage, or lien, or pledge, void—it simply
makes that provision of the contract void. Section 3711,
Revised Statutes 1899, prohibiting the compounding of inter-
est oftener than once a year has been on the statute books of
this State ever since 1845. [Sec. 5977, R. S. 1889; sec.
2728, R. S. 1879; sec. 6, ch. 89, R. S. 1865; sec. 6, ch. 85,
R. S. 1855; sec. 6, ch. 88, R. S. 1845.] But it was never
construed that this statute had any effect upon the validity of
the contract, in other respects, nor upon the mortgage, lien or
pledge given to secure the loan.

Prior to the Act of 1891 (Laws 1891, p. 170), the de-
fendant might plead usury, and upon the fact of usury being
ascertained, a judgment was entered for the real amount
loaned, with legal interest added, but the interest went to the
school fund and not to the lender.

The Act of 1891, made a radical change in the law. That
act (now secs. 3709 and 3710, R. S. 1899) is as follows:

"Sec. 1. Usury may be pleaded as a defense in civil
actions in the courts of this State, and upon proof that usur-

ious interest has been paid, the same, in excess of the legal rate of interest, shall be deemed payment, shall be credited upon the principal debt, and all costs of the action shall be taxed against the party guilty of exacting usurious interest, who shall in no case recover judgment for more than the amount found due upon the principal debt, with legal interest, after deducting therefrom all payments of usurious interest made by the debtor, whether paid as commissions or brokerage, or as payment upon the principal, or as interest on said indebtedness.

"Sec. 2. In actions for the enforcement of liens upon personal property pledged or mortgaged to secure indebtedness, or to maintain or secure possession of property so pledged or mortgaged, or in any other case when the validity of such a lien is drawn in question, proof upon the trial that the party holding or claiming to hold any such lien has received or exacted usurious interest for such indebtedness shall render any mortgage or pledge of personal property, or any lien whatsoever thereon given to secure such indebtedness, invalid and illegal."

It will thus be observed that under the law, all payments, whether made in the shape of interest, or commissions or brokerage or as principal, may be deducted from the sum actually loaned with legal interest added, and if the sum so paid in any of the said shapes or forms, or by whatever name it might be called, equals the loan and legal interest, the debt is considered paid and discharged. And in addition to this, if any mortgage or pledge is given to secure a loan that is tainted with usury, as aforesaid, the statute destroys the mortgage, lien or pledge absolutely by declaring it invalid and illegal.

By applying these principles to the facts of the case at bar, it follows that the transaction between Mrs. Smith and Oliver & O'Bryan was usurious, because more than eight per cent per annum was paid by the borrowers for the use of the money, to-wit, two per cent additional commissions or broker-

age to Hoyt.   It is immaterial that this was only two per cent, or seventy-six dollars.   It was just that much in excess of the legal rate, and it makes the loan as much usurious as if the excess had been ten, twenty, fifty or any other per cent in excess of the legal rate.

The contention that Mrs. Smith got no part of this excess, and did not even know of it, is no defense.   She did not know either of the fact that such a loan had been made to Oliver & O'Bryan for her.   But this will not avail her.   For her brother had full power to act for her and to lend her money without consulting her.   He was therefore an *alter ego,* and his acts and his knowledge are her acts and her knowledge— and his exaction or receipts, in any form or by any name, of a greater amount of interest than the law permits, makes the transaction as usurious as if she had acted for herself.   She knew she paid her brother nothing for his services.   The statute is leveled against taking usurious interest in any form, and it expressly recognizes and brings within its condemnation the form of collecting such excess as commissions or brokerage, whether the same be for the benefit of the lender or of any agent, broker or other person employed by the lender.

The pledge to Mrs. Smith was therefore void, and her mortgage is of no force in this case, unless it be true, as she claims, that the plaintiffs in error are estopped to plead such usury.

## II.

### Estoppel.

The plaintiffs in error are creditors of Oliver & O'Bryan, and, hence, are privies in representation with them, and can plead usury in the Smith loan that avoids the pledge.   [Coleman v. Cole, 158 Mo. l. c. 260.]   Under our statute, the mortgagor can plead usury, and thus make the mortgage or pledge void.   [Adler Clothing Co. v. Corl, 155 Mo. 149.]   This

being true, the creditors can do the same thing, for the creditor has the same right in this respect as the debtor.

Counsel for Mrs. Smith contend, however, that because the plaintiffs in error took a mortgage that expresses to be subject to all outstanding claims, charges and liens, they are estopped to deny the validity of the prior pledge to Mrs. Smith, and cases from other jurisdictions are cited in support of this contention. But those cases have no application here, because even the pledgor or mortgagor under our statute can avoid the pledge or mortgage, and what the pledgor or mortgagor can do in this regard, his creditors, being his privies in representation, can do as fully as he can do. The recital in the mortgage given to the plaintiffs in error could not make the pledge to Mrs. Smith valid, under our statute, any more than the recital in the pledge could. The recital in the mortgage binds the mortgagees so far as the outstanding pledges or liens or charges are legal, but not as to such as have no validity in law. The plaintiffs in error are not, therefore, estopped by reason of the recitals aforesaid in their mortgage.

## III.

After Mrs. Smith got possession of the whiskey by her writ of replevin suit, she sold it. This she had no right to do pending that suit. [Mohr v. Langan, 162 Mo. 474.]

It is insisted, however, that the plaintiffs in error participated in that sale, and can not now be heard to question it or to claim that the whiskey did not bring its full value. It cropped out during the trial that Barzen, one of the plaintiffs in error, attended that sale and arranged with one Rieger that he should buy in the whiskey at $45 a barrel and that Barzen would take one-half of it off of Rieger's hands at that price and that this was done. No such issue was tendered by the pleadings and upon timely objection, the court would doubtless have

Vol 169 mo—4

excluded this testimony. The plaintiffs in error are entitled to treat the property as in court, however, as Mrs. Smith had no legal right to sell the whiskey before the termination of her replevin suit. She must therefore be deemed to have it still in her possession and this being so, the property or its market value at the time she seized it, can be brought into court, and the court has power to order her to bring it or its value into court. If the court finds that it brought its market value at the sale, then the court can order her to bring that sum, or whatever it finds its market value to be, into court. The fact that Barzen agreed with Rieger not to bid at the sale and to take one-half of the whiskey off of Rieger's hands at forty-five dollars a barrel is some and quite persuasive evidence of the value of the whiskey, but such acts do not estop the plaintiffs in error from asserting the invalidity of Mrs. Smith's pledge, nor are they conclusive as to the value of the whiskey at the time Mrs. Smith sold it.

The judgment of the circuit court is reversed, and the cause remanded with directions to ascertain the value of the whiskey at the time it was taken by Mrs. Smith, under the writ of replevin, and to enter judgment in favor of the plaintiffs in error for the value of the whiskey so found and against Mrs. Smith, and in favor of the Western Storage and Warehouse Co. against Mrs. Smith for its reasonable storage charges and attorney's fee for filing this suit, and a judgment for costs against Mrs. Smith. All concur.

## MODIFICATION.

The foregoing opinion and the judgment herein are hereby modified so as to direct the circuit court to allow the plaintiffs in error interest on the ascertained value of the whiskey at the rate of six per cent per annum from the date it was taken by Mrs. Smith and B. Hoyt from the storage company until the day of judgment hereunder, and opinion and judg-

ment further modified so as to require the plaintiffs in error to pay the costs of storage and the attorney's fee to be allowed the storage company by the circuit court out of the proceeds of the judgment to be entered against Mrs. Smith and B. Hoyt. All concur. May 21, 1902.