MISSISSIPPI VALLEY TRUST CO. v. OKLAHOMA RY. CO. et al.

No. 3272.

Circuit Court of Appeals, Tenth Circuit.

July 6, 1946.

284

Roy C. Lytle, of Oklahoma City, Okl. (D. I. Johnston, of Oklahoma City, Okl., S. Mayner Wallace, of St. Louis Mo., and Keaton, Wells & Johnston of Oklahoma City, Okl., on the brief), for appellant.

D. A. Richardson, of Oklahoma City, Okl. (K. W. Shartel and Richardson, Shartel, Cochran & Pruet, all of Oklahoma City, Okl., on the brief), for appellees.

Before PHILLIPS, BRATTON, and MURRAH, Circuit Judges.

PHILLIPS, Circuit Judge.

On January 3, 1911, the Oklahoma Railway Company,[1] an Oklahoma Corporation, executed a trust indenture running to the Mississippi Valley Trust Company, as trustee,[2] to secure $12,000,000 of First Refunding Mortgage 5 per cent Gold Bonds, of which $5,280,000 were issued. On September 25, 1939, and all material times thereafter, $2,447,000 of such bonds were outstanding in the hands of the public. Each of such bonds was in the denomination of $1,000. All of them were due on January 1, 1941. They bore interest at 5 per cent per annum, payable semi-annually from date until paid, evidenced, until maturity, by coupon bonds in the sum of $25 each, the first of such coupons being payable on July 1, 1911.

Each of the coupons contained the following recital:

" * * * being interest then due on First and Refunding Mortgage Five Per Cent. Gold Bond of said Railway Company No. ————, all as provided in and subject to the terms of said bond and the deed of trust therein mentioned."

Each of the bonds contained the following recital:

"If default shall be made in the payment of the interest on this bond or in the performance of any of the covenants and agreements in said deed of trust, contained, on the part of the Railway Company to be performed, then the principal hereof may be declared and become due and payable as provided therein."

---

[1] Hereinafter called the Railway Company.

[2] Hereinafter called the trustee.

Each bond provided that the Railway Company would pay "interest thereon from the first day of January, 1911, until paid," at the rate of 5 per cent per annum, payable semi-annually, on the first days of July and January in each year, at the Mississippi Valley Trust Company in St. Louis, Missouri, or, at the option of the coupon holder, at the Harris Trust and Savings Bank in Chicago, Illinois, and that such interest, until the maturity of the bond, should be payable only upon presentation and surrender of the respective interest coupons attached to the bond evidencing such interest.

The bonds expressly provided that they were secured by the trust indenture and that reference was made to the trust indenture for a description of "the property rights and franchises thereby mortgaged, the nature and extent of the security thereby created and the terms and conditions upon which said bonds are or may be issued and secured, * * *." The trust indenture provided that no holder of any bond or coupon should have the right to sue in equity or at law on account of any such bond or coupon or for the foreclosure of the trust indenture, but that all rights of action on account of the bonds and coupons should be vested exclusively in the trustee.

Article 8 of the trust indenture in part provided:

"Covenant to Pay Principal and Interest.

"Section 1. The Railway Company covenants that it will pay the principal of all the bonds issued under this indenture, and interest thereon until paid, such interest until the maturity of said bonds being payable only upon presentation and surrender of the interest coupons thereto belonging, when the same shall become due according to the terms thereof, * * *"

Article 9 of the trust indenture in part provided that in the event of default in the payment of interest or principal, or in the due observance or performance of any other covenant, condition, or agreement therein required to be kept or performed by the Railway Company, the trustee might, and upon request of the holders of a majority of said bonds then outstanding,

should cause the indenture to be foreclosed and the mortgaged property or any part or parts thereof to be sold; and that the proceeds arising from any such sale or sales should, as received, be applied "to the pro rata payment of all coupons matured and remaining unpaid, with interest thereon at the rate of five per cent * * * per annum" and that the residue of such proceeds should be applied on the principal of the outstanding bonds, ratably and without discrimination or preference.

The Railway Company defaulted in the covenant of the trust indenture relative to maintenance and, on September 25, 1939, the trustee, pursuant to the terms of the trust indenture, accelerated the maturity of all the bonds, then outstanding, and notified the Railway Company that proceedings would be instituted immediately for the appointment of a receiver and the foreclosure of the lien of the trust indenture.

On September 27, 1939, the Railway Company filed its petition for reorganization under Chapter 10 of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq. The petition was duly approved and trustees were appointed.

At the time of the filing of the petition for reorganization, there was attached to each bond coupons maturing January 1, 1940, July 1, 1940, and January 1, 1941. On the last date, the entire bond issue matured according to the terms of the bonds. On February 10, 1940, the trustee filed its claim upon the bonds without stating the amount it claimed to be due for principal or interest. The trial court allowed the claim in the sum of $2,447,000, with simple interest thereon at 5 per cent per annum from the date of the last payment of interest until paid and the trustees duly paid the same. Thereafter, the trustee filed an application for the allowance of interest semi-annually on the interest that accrued on the bonds after July 1, 1939. The trial court allowed interest on the interest that had accrued on the bonds between July 1, 1939, the date of the last payment of coupons, and September 27, 1939, the date of the filing of the petition, amounting to $7,517.71, and denied the ap-

plication as to the remainder of the interest on interest claimed. From an order entered accordingly, the trustee has appealed.

Since the bonds and coupons were made payable at St. Louis, Missouri, it will be presumed that the parties contracted with reference to the laws of Missouri, there being nothing in the bonds or trust indenture to evince a contrary intent.[3]

The coupons expressly provided that they were payable "as provided in and subject to the terms" of the bond and the trust indenture. In Globe Indemnity Co. v. Mississippi Valley-Merchants' State T. Co., St. Louis Court of Appeals, 226 Mo. App. 92, 41 S.W.2d 962, the court held that the bonds and coupons herein involved were subject to the provisions of the trust indenture and, because of the provision vesting the sole right of action in the trustees, were nonnegotiable.

We held in Roswell Drainage Dist. v. Parker, 10 Cir., 53 F.2d 793, that where a coupon bears its own maturity date, contains its own obligation or promise to pay a certain sum on a certain day to the bearer, it is an independent obligation with all the qualities of commercial paper and bears interest after maturity as do other contracts for the payment of money, but those principles have no application here, for the coupons were nonnegotiable and a nonnegotiable coupon does not bear interest after maturity in the absence of an express provision therein for the payment of interest after maturity.[4]

The theory upon which some courts hold that interest coupons or notes, executed by the maker of a note or bond to evidence installments of interest, bear interest after maturity, without express provision therein to that effect, is that such interest coupons or notes have all the qualities of commercial paper.[5]

Under the law of Missouri, although a note provides for the payment of interest at stipulated periods, interest on past-due interest will not be allowed in the absence of an express provision therefor.[6]

The provisions of Article 9 of the trust indenture do not constitute a promise to pay interest on past-due coupons. Such provisions fix the manner of distribution in the event of a foreclosure sale and, at most, provide for interest on past-due coupons in the event of a foreclosure sale, a contingency that never occurred. It is true the provisions of Article 9 indicate that the draftsman of the trust indenture assumed that other provisions provided for interest on past-due coupons, but the draftsman labored under the erroneous assumption that the bonds and coupons were negotiable instruments, because the bonds recited that they were to be deemed negotiable instruments, unless registered, and that the registry of the bonds should not affect the negotiability of the coupons. But the coupons, not being negotiable, did not bear interest after maturity, since there was no express obligation to pay interest on the coupons.

Moreover, § 6497, R.S.Mo., 1919, Id. § 3232, R.S.Mo., 1939, Mo.R.S.A., provides that "parties may contract, in writing, for the payment of interest upon interest; but the interest shall not be compounded oftener than once in a year. * * *" If the provision in the trust indenture could be construed as a promise to pay interest on coupons, it would amount to a compounding of interest semi-annually, which would render the provision void.[7]

Finally, the purpose and function of the coupons were to evidence the interest on the bonds from date until maturity. After maturity of the bonds, the interest was payable under the provision of the bonds themselves, entirely separate and

---

[3] Joffe v. Bonn, 3 Cir., 14 F.2d 50, 52; Carson Nat. Bank v. American Nat. Bank, 225 Mo.App. 948, 34 S.W.2d 143, 147; Sterrett v. Stoddard Lumber Co., 150 Ore. 491, 46 P.2d 1023, 1028.

[4] United States Mortgage Co. v. Sperry, 138 U.S. 313, 336–343, 11 S.Ct. 321, 34 L.Ed. 969.

[5] Note 27 A.L.R. pp. 87–93.

[6] Stoner v. Evans, 38 Mo. 461–463 (Reprint pages 286, 287, 288); Edwards v. Northwestern Mut. Life Ins. Co., Mo. App., 183 S.W.2d 359.

[7] Whitworth v. Davey, Mo.App., 185 S.W. 241, 244; Id., 279 Mo. 672, 216 S. W. 736, 737; Western Storage & Warehouse Co. v. Glasner, 169 Mo. 38, 68 S. W. 917, 919.

apart from the coupons. Performance of the covenants of the trust indenture was contemplated, including payment of the coupons, evidencing the semi-annual interest up to the maturity of the bonds in 1941. But when default occurred and the due date of the bonds was accelerated to September 25, 1939, the provision in the bonds themselves for interest became the enforceable obligation for interest thereafter and the undue coupons, then attached to the bonds, were discharged.[8]

Affirmed.

---

[8] Garland v. Union Trust Co., 63 Okl. 243, 165 P. 197, 202; Moore v. Cameron, 93 N.C. 51, 57, 58; Dugan v. Lewis, 79 Tex. 246, 14 S.W. 1024, 12 L.R.A. 93, 23 Am.St.Rep. 332; Cf. Toll v. Colorado Nat. Bank, 86 Colo. 529, 283 P. 778, 780.