## POWELL v. UNITED STATES.
### No. 4630.

United States Court of Appeals
Tenth Circuit.
July 31, 1953.

Ellis M. Brown and Lonnie W. Brown, McAlester, Okl., for appellant.

Roger K. Allen, Asst. U. S. Atty., E. D. Oklahoma, Stilwell, Okl. (Edwin Langley, U. S. Atty., E. D. Oklahoma, Muskogee, Okl., was with him on the brief), for appellee.

Before PHILLIPS, Chief Judge, and MURRAH and PICKETT, Circuit Judges.

PHILLIPS, Chief Judge.

Powell was tried under an indictment which charged that he carried on the business of a retail liquor dealer without having paid the special tax required by law, in violation of 26 U.S.C.A. § 3253. The jury returned a verdict of guilty. Powell was sentenced to pay a fine of $500 and to be imprisoned for the period of one year and one day.

Hall, an investigator for the Alcohol and Tobacco Tax Division of the Department of Internal Revenue, testified that on March 22, 1952, at a filling station located at 817 North Main Street, McAlester, Oklahoma, he purchased one pint of Hill and Hill whisky for the sum of $4.00 from a man

whom he later identified as Powell; that on April 4, 1952, he returned to the filling station and purchased one-half pint of Seagram's 7-Crown whisky from a filling station attendant, and that a man whom he later identified as Powell was present during the transaction; that on each occasion, the whisky purchased was taken by the seller from a safe on the premises and that he observed approximately a case and a half of taxpaid whisky in such safe.

Hamilton testified that on April 16, 1952, and prior thereto, he was engaged in the wholesale liquor business, and that during the latter part of March, 1952, he sold whisky two or three times a week to Powell.

DeGroot, an investigator for the Alcohol and Tobacco Tax Division, testified that on March 15, 1952, he had under observation the premises of Hamilton and observed Powell loading into his automobile, packages, which had the appearance of lugs of whisky.

Dale, an investigator for the Alcohol and Tobacco Tax Division, testified that on March 16, 1952, he had under observation the Hamilton wholesale liquor establishment and observed the loading of packages of the size and shape of lugs of whisky into an automobile, and that he delivered such information to DeGroot by radio.

DeGroot further testified that after receiving such information he observed Powell leaving the Hamilton premises in an automobile.

Dale further testified that he searched the filling station under a Federal search warrant on April 16, 1952, and seized 16 and ⅕ gallons of various brands of whisky.

Bannister, an employee of the Collector of Internal Revenue, Wage and Excise Tax Division, testified that on April 29, 1952, Powell made application for and purchased a retail liquor dealer's stamp for the filling station premises and that the records of the Collector of Internal Revenue did not disclose payment of a retail liquor dealer's special tax by Powell during the fiscal year ending June 30, 1952, prior to April 29, 1952.

Powell offered testimony that he leased the filling station premises from Steve Hugo under a lease expiring in 1955; that during the month of March, 1952, the filling station was subleased to one Kabrich; that on March 27, 1952, he purchased Kabrich's interest in the filling station and resumed operation of the filling station on April 1, 1952. He also introduced evidence to the effect that he did not operate the filling station during the month of March, 1952.

On April 15, 1952, Hall signed an affidavit for the search warrant, in which he averred that he purchased one pint of Hill and Hill whisky at the filling station, and that the records of the Collector of Internal Revenue for the District of Oklahoma did not disclose that a Federal retail liquor dealer's tax stamp had been issued to Powell or any other individual for the filling station premises. In the affidavit Hall did not name Powell as the seller, but set forth a description of the person from whom he made the purchase.

At the trial Hall testified that he did not know the person from whom he purchased whisky on March 22, 1952; that he went to the filling station on April 16, 1952, after the search warrant had been served, for the purpose of identifying the seller; that he identified the seller and was told by Investigator Dale that he was Powell.

An asserted inconsistency between Dale's testimony and the averments in the affidavit was fully explored by the cross-examination. However, in fact, there was no inconsistency. Hall, of course, knew Powell by reputation prior to April 16, 1952, but he did not know that the seller was Powell until he identified him and was told that the seller was Powell on April 16, 1952.

 Opportunity for proper cross-examination is a matter of right.[1] However, the court, in the exercise of a sound discretion, may limit cross-examination and keep it within proper bounds.[2] Here, the

1. Alford v. United States, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624.

2. United States v. German-American Vocational League (and eight other cases), 3 Cir., 153 F.2d 860, 865, certiorari denied 328 U.S. 833, 66 S.Ct. 976, 90 L. Ed. 1608 (four cases), Id., 3 Cir., 156 F.2d 235, certiorari denied 329 U.S. 760,

cross-examination was limited only after adequate opportunity had been afforded to test Hall's credibility by cross-examination and the limitations placed on the cross-examination by the trial judge were reasonable and did not amount to an abuse of discretion.

■ After an exhaustive cross-examination of the Government's witness, Hamilton, on matters which went to his credibility, the court sustained an objection to the question, "When did you first know that you were to be a witness in this case?". Hamilton appeared as a witness in response to a subpoena and we do not think the court abused its discretion in limiting the cross-examination of Hamilton.

■ After the Government had established a sale of whisky by Powell at the filling station on March 22, 1952, and the presence of a stock of liquor at the filling station and the purchase of whisky two or three times weekly by Powell from Hamilton during the latter part of March, 1952, we think there was no error in admitting evidence of the continuance of the operation of the business of retail liquor dealer during April, 1952, although in the latter part of that month Powell purchased a retail liquor dealer's stamp which covered the entire month of April. It was mere proof of the continuance of an existing business and tended to corroborate the fact that Powell was operating as a retail liquor dealer at the filling station in March, 1952. Moreover, it should be observed that Powell did not even purchase a stamp for the month of April until after the search on April 16 had disclosed a large stock of whisky at the filling station.

■ Kabrich was called as a witness by Powell for the purpose of establishing that he, not Powell, operated the filling station in March, 1952. On cross-examination the Government was permitted to ask Kabrich whether he had a retail liquor dealer's stamp in March, 1952. We think that was proper cross-examination. Someone was operating the retail liquor dealer's business at the filling station in March, 1952. The Government's evidence established that the operation was carried on by Powell. Whether Kabrich had a retail liquor dealer's stamp went, we think, to the credibility of his testimony, in which he endeavored to absolve Powell.

Here, the proof established only a single sale of whisky at the filling station in March, 1952, but the proof established that there was a stock of liquor present in the filling station on the date of purchase and that Powell was purchasing whisky from Hamilton at intervals of two or three times a week during the latter part of March. There was also evidence from which the jury might reasonably infer that Powell was transporting whisky purchased from Hamilton to the filling station on March 15 and again on March 16, 1952. Such sale, coupled with the surrounding facts and circumstances established by the Government's evidence was sufficient to warrant the jury in concluding that Powell was carrying on the business of retail liquor dealer at the filling station during the last half of March, 1952. See Heath v. United States, 10 Cir., 169 F.2d 1007, 1009.

■ The court did not instruct the jury as contended by counsel for Powell, that proof of a single sale would justify conviction. Read as a whole, the instructions plainly told the jury that proof of a single sale, coupled with other facts and circumstances showing that Powell was engaged in the business of a retail liquor dealer, would warrant a conviction.

■ We are of the opinion that the record is free of prejudicial error and that the evidence adduced by the United States afforded abundant proof from which the jury could find that in March, 1952, Powell was conducting a retail liquor business at the filling station premises without having paid the special tax for a retail liquor dealer.

Affirmed.

67 S.Ct. 114, 91 L.Ed. 655; United States v. 3.544 Acres of Land, 3 Cir., 147 F.2d 596, 601; Rose v. United States, 10 Cir., 128 F.2d 622, 626; United States v. Stoehr, 3 Cir., 196 F.2d 276, 280, certiorari denied 344 U.S. 826, 73 S.Ct. 28.