St. Louis-San Francisco Railway Company, Appellant, v. Frank C. Millspaugh, Commissioner of Finance, and in Charge of the Liquidation of Thomas Egger, Private Banker, Respondent.*

In the Springfield Court of Appeals. Opinion filed January 8, 1926.

**1.—Banks and Banking—Drafts—Bank Insolvent—Preferred Claim.** Where a bank sells a draft on another bank and receives the cash therefor, knowing or having reason to believe that it is insolvent, and that it has not sufficient funds in the drawee bank to pay the draft, it is guilty of a fraud, and the purchaser of such draft may, as a general rule, rescind the purchase and recover the money paid therefor, or will have priority over general creditors.

**2.—Same—Same—Whether Drawee Bank Refusing Payment Had Sufficient Funds Held Immaterial.** Where payment of drafts drawn by insolvent bank was refused because such bank was in hands of commissioner of finance, question whether there were sufficient funds in drawee bank was immaterial, in view of section 11709, Revised Statutes 1919, in determining question of preference.

**3.—Same—Same—Sale of Draft by Insolvent Bank—Preferred Claim.** Where railroad agent bought drafts from bank at which it was not a depositor, and payment was refused because of bank's insolvency, railroad was entitled to preferred claim against bank's assets; obligation of the bank being that of trustee.

---

*Corpus Juris-Cyc. References:  Banks and Banking, 7CJ, p. 751, n. 77,

Appeal from the Circuit Court of Barton County.—Hon. B. G. Thurman, Judge.

Reversed and remanded.

*E. T. Miller,* of St. Louis, *George W. Good,* and *Mann & Mann,* all of Springfield, for appellant.

(1)   Thomas Egger, Banker, at the time he received plaintiff's money in payment for the drafts, knew that he was insolvent, and that said drafts would not be paid, and he will be held to have received said money wrongfully and to hold same as trustee.   Whitcomb v. Carpenter, 134 Iowa, 227, 10 L. R. A. (N. S.) 928, 111 N. W. 825; Wedman v. Kellogg, 22 N. D. 396, 133 N. W. 1020, 39 L. R. A. (N. S.) 563; Stoler v. Coates, 88 Mo. 514; Cragie v. Hadley, 99 N. Y. 131, 52 Am. R. 9, 1 N. E. 537; Richardson v. Debenture Redemption Co., 102 Fed. 780, 52 L. R. A. 67; Capital National Bank v. Coldwater National Bank, 49 Neb. 786, 69 N. W. 116; St. Louis & S. F. R. Co. v. Johnson, 133 U. S. 566, 33 L. Ed. 683; Peak v. Ellicott, 30 Kan. 156, 46 Am. R. 90, 1 Pac. 499.   (2)   The Egger Bank held the money received by it in payment of the two drafts in question in trust for their payment, and the money went into the hands of respondent impressed with the trust.   The Egger Bank could only have become the owner of these funds as and when the New England National Bank, on which the drafts were drawn, placed the money to the credit of appellant.   Stoler v. Coates, 88 Mo. 514; Federal Reserve Bank of St. Louis v. Millspaugh; Bank of Poplar Bluff v. Millspaugh and cases cited.   (Both of the foregoing cases were decided by this court recently, but are not yet reported); Stasiak v. Kalucki, 255 S. W. 987.   (3)   It is admitted that the payments made by plaintiff augmented to the amount thereof the assets of said banker that passed into the hands of defendant, and, although the amount of said payments were commingled with other assets of said bank and not susceptible of identification, still plaintiff is entitled to recover full amount of same.   Harrison v. Smith, 83 Mo. 210; Stoler v. Coates, 88 Mo. 514; Snodgrass v. Moore, 30 Mo. App. 232; Flint Road Cart Co. v. Stephens, 32 Mo. App. 341; Bank v. Sanford, 62 Mo. App. 394; Brick Co. v. Schoeneich, 65 Mo. App. 283; Insurance Co. v. Kimbel, 66 Mo. App. 370; Leonard v. Latimer, 67 Mo. App. 138; Evangelical Synod v. Shoeneich, 143 Mo. 652; Poundman v. Schoeneich, 144 Mo. 149; Tierman's Ex. v. Security B. & L. Ass'n, 152 Mo. 135; Tufts v. Latshaw, 172 Mo. 359; Orr v. St. Louis Trust Co., 291 Mo. 383; Schultz v. Bank of Harrison, 246 S. W. 614.

*H. W. Timmonds,* of Lamar, for respondent.

(1)   Appellant's first point is based upon a conclusion not warranted by the record when it assumes when the banker received the appellant's money for these drafts he knew he was insolvent, and thereby became a trustee. There is no evidence that the banker knew

at the time of the purchase of the drafts he was insolvent, nor that the bank was actually insolvent; these are questions yet to be determined by the courts and upon which juries have not agreed as yet. (2) The statutes of this State give various grounds and reasons for the Finance Department of the State taking possession of the business and property of a bank. In the absence of proof no one ground, such as insolvency, can be assumed or presumed. Sec. 11700, R. S. 1919. (3) The transaction between the appellant and the banker when the appellant bought the two drafts in question was one of purchase and sale, not one of trust; the draft is not a credit, it is only a direction to the correspondent bank to pay the amount designated, to the payee therein named. Legnti v. Mechanics & Metals Natl. Bank, 230 N. Y. 415, 16 A. L. R. 185; Tanssig v. Trust Co., 213 N. Y. 627; Harrison v. Wright, 100 Ind. 515, 50 Am. Rep. 805. (4) The bank's depositors deposited their money relying upon the credit of the bank that the amounts would be repaid when called for. The appellant purchased the drafts relying upon the credit of the bank also; there should be equality among the creditors, nor preference to one. Harrison v. Wright, 100 Ind. 515, 50 Am. Rep. 805. (5) Until the two drafts were presented to the bank upon which they were drawn and paid, the relations of appellant and the bank issuing the drafts was that of creditor and debtor, and the appellant is only entitled to *pro rata* distribution among the creditors of the Egger Bank, and not to a preference or priority. Dickinson v. Coates, 70 Mo. 250. (6) The receipt of the money paid for these two drafts did not swell the assets of the bank, even if they did pass into the Finance Commissioner's possession, because the issuing of these two drafts to the appellant created a debt of the bank equal to the amount received. Spiroplos v. Bank (Wash.), 199 Pac. 997; Rugger v. Hammond, 95 Wash. 85, 163 Pac. 408.

BRADLEY, J.—For convenience we will refer to the claimant and the commissioner of finance as plaintiff and defendant.

Plaintiff had a demand against Thomas Egger, Private Banker, whose bank had failed, and sought to have this demand allowed as a preferred claim. The trial court denied a preference and plaintiff appealed.

The facts are as follows. Thomas Egger, Private Banker, conducted a bank at Lamar, Mo. May 13, 1924, plaintiff's station agent at Lamar bought from Egger's bank a draft in the sum of $221.18 and gave cash therefor in the sum of $66 and the balance in certain checks which plaintiff held, all of which checks were paid. The draft was drawn on the New England National Bank of Kansas City, Mo. May 14, 1924, the station agent bought another draft from Egger's bank in the sum of $97.01. The agent paid $80 cash on this latter draft

and the balance in checks, all of which checks were paid. This draft was also drawn on the New England National Bank of Kansas City. These drafts were duly presented to the New England National Bank, the drawee, on May 15, 1924, and payment was refused because Egger's bank was then in the hands of the commissioner of finance.

Plaintiff was not a depositor at Egger's bank and, so far as appears, sustained no relation with it except that it purchased these drafts for which it in effect paid the cash. Where a bank sells a draft on another bank and receives the cash therefor knowing or having reason to believe that it is insolvent, and that it has not sufficient funds in the drawee bank to pay the draft, it is guilty of a fraud, and the purchaser of such draft may, as a general rule, rescind the purchase and recover the money paid therefor, or will have priority over general creditors. [3 R. C. L., p. 557, sec. 184; Whitcomb v. Carpenter, 111 N. W. (Iowa) 825, 10 L. R. A. (N. S.) 928; Widman v. Kellogg, 133 N. W. (N. D.) 1020, 39 L. R. A. (N. S.) 363.] In Whitcomb v. Carpenter, supra, it appears that one O. E. Snyder was doing business as a private banker under the name of the Bank of Olin, and becoming insolvent made an assignment. A few days prior to the assignment and when he knew his bank was insolvent, and knew he had no funds in his correspondent bank, Snyder sold plaintiff a draft on his correspondent bank for $190 receiving full value for said draft. The draft was not paid, and Snyder failed to return the money paid therefor, and thereupon plaintiff sought to have his claim allowed as a preferred one. The lower court denied a preference, but on appeal this decision was reversed and it was held that the claim was entitled to preference.

In Widman v. Kellogg, supra, the statement discloses that the plaintiff was agent for the Great Northern Railway Company and the Great Northern Express Company, and that it was his duty to promptly remit funds received for these companies. It was his custom in remitting such funds to purchase drafts from the People's State Bank and send the drafts in remittance. From January 21st to the 25th, 1910, he purchased four drafts from the People's State Bank aggregating $1074.95, and these drafts were drawn on the Security National Bank, correspondent of the People's State Bank. These drafts were transmitted and presented, and payment refused because there were no funds of the People's State Bank in the drawee bank with which to pay. The People's State Bank closed on January 26th. On these facts plaintiff's claimed was given preference.

We find no case in our own jurisdiction the facts of which are so similar to the facts of the cause at bar as are Whitcomb v. Carpenter and Widman v. Kellogg, supra. But in Stoller et al. v. Coats, 88 Mo. 514, the same principle of law was applied. In Stoller v. Coats, it appears that one Ernest of Colorado consigned to plaintiffs Stoller

220 Mo. A.—8.

& Hill of Kansas City ten cars of cattle with instructions to sell and deposit proceeds in the Exchange Bank of Denver to the credit of the consignor Ernest. The gross proceeds of the sale amounted to $3769.75 and was in the form of a draft. Stoller & Hill's bookkeeper Hale took this draft to the Mastin Bank for the purpose of carrying out instructions of the consignor. The net proceeds payable to the consignor were a little less than the draft, so the draft was deposited to the credit of Stoller & Hill, and Hale, the bookkeeper thereupon drew the partnership check of Stoller & Hill in the sum of $3757.56 the amount going to the consignor, making said check payable to the bank or to themselves, and indorsed it in the name of the partnership, and delivered this check to the Mastin Bank with the request that it place the proceeds in the Exchange Bank of Denver to the credit of Ernest the consignor. The Exchange Bank of Denver was a correspondent of the Mastin Bank so the latter bank gave Hale the following receipt or paper:

"The Mastin Bank

"Kansas City, Mo. August 1, 1878.

"Exchange Bank of Denver, Colorado:

"Your account has credit $3757.56, deposited by Stoller & Hill, for use of F. P. Earnest.

"Very respectfully,

"JOHN J. MASTIN, Cashier.

Per J. A. BOARMAN, Teller."

Stoller & Hill at once sent this memorandum to Earnest, and the Mastin Bank sent a copy to the Exchange Bank of Denver. Before it reached the Exchange Bank the Mastin Bank had closed and made an assignment. The Exchange Bank refused to charge the amount to the Mastin Bank or to place it to the use of Earnest or to pay Earnest. The consignor Earnest sued Stoller & Hill and recovered, and the judgment paid. Thereupon Stoller & Hill sought to have their claim given preference. The court held under the facts above stated that the funds remained in the Mastin Bank impressed with a trust and that the relation of debtor and creditor between Stoller & Hill and the Mastin Bank was not created. The case of Stoller v. Coats, supra, it cited in Widman v. Kellogg, supra, as sustaining the conclusion there reached and is also cited in the L. R. A. note to Whitcomb v. Carpenter, supra, as sustaining the proposition that where a bank sells a draft on another bank and receives cash therefor knowing or having reason to believe it is insolvent, and that it has not the funds in the drawee bank to pay such draft, it is guilty of a fraud, and the purchaser of such draft will be allowed to rescind the purchase and recover the money paid therefor.

In the case at bar it does not appear whether Egger's bank had a sufficient amount to its credit in the New England National Bank to

pay the drafts mentioned in the record. It may be inferred, however, that there was a sufficient credit in the New England National Bank to take care of the two drafts. It is stated in the record that it was agreed that payment was refused when the drafts were presented because Egger's bank was then in the hands of the commissioner of finance. Whether Egger's bank had a sufficient deposit with the New England National Bank to pay these drafts when drawn we do not regard as controlling. The fact of consequence is whether Egger's bank was insolvent when these drafts were drawn and he or those in charge knew it was then insolvent. The law requires that when the commissioner of finance shall have taken charge of a bank he shall forthwith give notice of such fact to all banks, trust companies, individuals, etc., holding any assets of the closed bank, and after notice no one shall have a lien or charge against the closed bank for any payment, advance or clearance. [Sec. 11709, R. S. 1919.] We think that this statute renders unimportant the question of whether Egger's bank at the time the drafts were drawn had a sufficient deposit with the New England National Bank to pay them. It may be presumed that the commissioner did his duty respecting notice. In any event the drawee bank knew that Egger's bank was in the hands of the commissioner, and that knowledge was sufficient for its refusal to pay the drafts.

This cause was tried on an agreed statement of facts, but there is no agreement upon the question of insolvency and knowledge of such on the part of Egger or those in charge. These facts, it seems were assumed, and a preference was denied on the theory that under the facts the relation of debtor and creditor was created, or that the transaction amounted to a mere purchase and sale, and that no question of a trust was involved. There are cases so holding some of which are collected and discussed in Legnite v. Mechanics & Metal National Bank, 230 N. Y. 415, 130 N. E. 597, 16 A. L. R. 185, and in the A. L. R. note. But we have a different rule in this State laid down in Stoller v. Coates, supra. [See, also, Bank of Poplar Bluff v. Millspaugh, 275 S. W. (Mo. App.) 579.]

The judgment should be reversed and the cause remanded and it is so ordered. *Cox, P. J.,* and *Bailey, J.,* concur.