OF THE

## STATE OF MISSOURI

AT THE

## OCTOBER TERM, 1925.

*(Continued from Vol. 313.)*

---

FEDERAL RESERVE BANK OF ST. LOUIS v. FRANK C. MILLSPAUGH, Commissioner of Finance, Appellant.

In Banc, April 9, 1926.

1. **BANK: Collection of Drafts: Principal and Agent: Trust Fund: Preference.** Where a note, check or draft is sent by one bank to another for collection, under directions to collect and forward the proceeds to the sender, the relation of principal and agent is created, and not that of creditor and debtor; and if the instrument is collected, the proceeds constitute a trust fund in favor of the sender, which is entitled to preference over general creditors of the collecting bank.

2. ———: ———: **By Charging to Drawer: Trust Fund.** The relation between the bank which sends checks to another for collection being that of principal and agent, the funds collected by the collecting bank for the sending bank become impressed with a trust in favor of the owner of the check collected, although the check be one drawn on the collecting bank and is collected by charging the ·

(1)

amount of the check against the drawer's account in the collecting bank, or if it be a check payable at the collecting bank and is collected by a check drawn on it.

3. ——: ——: **Trust Fund: Failure of Collecting Bank: Preference: Conditions.** The relation between a bank sending drafts, notes and checks to another bank being that of principal and agent, and the amount of the items sent when collected being impressed with a trust in favor of the sender, the trust follows the fund collected into the hands of the receiver of the collecting bank upon its failure, and although the bank may fail and pass into the hands of the Commissioner of Finance before remitting the proceeds of the amount collected by it, the fund is still impressed with the trust, provided: (a) the check or draft was forwarded for collection and remittance; (b) the drawer of the check had a sufficient balance to his credit with the collecting bank to authorize the charging of the check to his account; (c) at the time the charge was made the collecting bank had sufficient funds available to pay the check; and (d) the bank which failed had at the time the receiver or commissioner took charge of it sufficient funds on hand to pay the amount it had collected.

4. ——: ——: **Change of Relation: Agreement: Admission: Uncollectible Paper.** The relation of principal and agent between a bank sending checks to another for collection and remittance is not changed by a prior agreement by the terms of which the proceeds of checks collected were to be forwarded to the sending bank, in currency or acceptable exchange, or by an attempted remittance in uncollectible paper. And the sending by the collecting bank of exchange drafts drawn by it upon a third bank (its correspondent) as an attempted remittance of the collection made is indicative of a purpose to segregate and set aside, out of the funds to its credit in the correspondent bank, the amount stated in the drafts for the benefit of the sender.

5. ——: ——: **Substitution of Different Relation: Intention: Preference: Equity.** That the relation of principal and agent existed between a bank and another to which were sent checks for collection is made manifest by the fact that the sending bank did not intend that the other bank should use the proceeds of the collection in its usual course of business, but entrusted the checks to it for the specific purpose of collecting them and remitting the proceeds, and no other. A power to do a thing, although specific, carries with it by implication whatever is necessary to accomplish the thing authorized; but power to collect checks and promptly remit the proceeds cannot be destroyed by implication, nor the relation of creditor and debtor be substituted for the existing one of principal and

Federal Reserve Bank v. Millspaugh.

agent. Although the collecting bank commingles the proceeds of the checks sent to it for collection with its general funds, it cannot thereby convert such proceeds, but equity will follow the trust fund, segregate it from the general assets, and give it a preference to payment over general debts of the collecting bank.

6. ————: ————: Trust Fund: Draft: Assignment. The drawing and delivery by one bank to another of a draft drawn on the drawer's correspondent is an equitable assignment for the amount of the draft against the funds then in the correspondent bank to the drawer's credit.

Corpus Juris-Cyc. References: Agency, 2 C. J., Section 223, p. 586, n. 17. Assignments, 5 C. J., Section 83, p. 922, n. 69. Banks and Banking, 7 C. J., Section 260, p. 606, n. 85; Section 277, p. 614, n. 47; Section 282, p. 617, n. 72; Section 301, p. 625, n. 76; p. 626, n. 77.

## Appeal from Scott Circuit Court.—*Hon. Frank Kelly,* Judge.

AFFIRMED.

*Bailey & Bailey* for appellant.

(1) No trust fund or agency relation existed between plaintiff and defendant. The plaintiff stood in the same position as the drawers of the various checks, which were presented to the defendant for settlement, and the relation was that of creditor and debtor. American Bank of DeSoto v. Peoples Bank, 255 S. W. 943; Utley v. Hill, 155 Mo. 232; Allen Grocery Co. v. Bank, 192 Mo. App. 476; People v. Bank, 778 N. Y. 269, 34 Am. Rep. 532. (2) No trust fund was created in this case, and no increase of assets was made in favor of the Bank of Oran. American Bank of DeSoto v. Peoples Bank, 255 S. W. 943; Pundmann v. Schoenich, 144 Mo. 149; Am. Car Co. v. Williams, 176 Fed. 823; Empire State Surety Co. v. Carroll County, 194 Fed. 606; Midland Nat. Bank v. Brightwell, 148 Mo. 358. (3) By accepting the drafts in accordance with agreement between plaintiff and defendant, as disclosed by agreed statement of facts, the plaintiff acquiesced in the relation of creditor and debtor. 3 R. C. L. p. 632, sec. 261; People v. Merchants Bank,

78 N. Y. 269, 34 Am. Rep. 532; People v. City Bank, 93 N. Y. 582; Gonyer v. Williams, 158 Cal. 452; Bowman v. First Nat. Bank, 9 Wash. 614, 38 Pac. 211; Akin v. Jones, 93 Tenn. 353, 25 L. R. A. 523; Bank of Omaha v. Glanton, 146 Ga. 786, L. R. A. 1917 F. p. 600.

*James G. McConkey* for respondent.

(1) Where no reciprocal accounts are kept between two banks, and a note, draft or check bearing the restrictive indorsement "for collection and remittance" is forwarded by one of the banks to the other under directions to collect and forward the proceeds to the sender, the relation of principal and agent is created, and not that of debtor and creditor. The funds so collected constitute trust funds and are entitled to a preference until paid to the one originally depositing the item for collection. Midland Nat. Bank v. Brightwell, 148 Mo. 359; Ripley Nat. Bank v. Latimer, 64 Mo. App. 321; First Nat. Bank v. Sanford, 62 Mo. App. 394; Harrison v. Smith, 83 Mo. 210; Federal Reserve Bank v. Peters, 123 S. E. 379; Hawaiian Pineapple Co. v. Brown, 220 Pac. 1114; Messenger v. Trust & Savings Bank, 187 N. W. 545; Goodyear Tire Co. v. Hanover State Bank, 109 Kan. 772; Kesl v. Hanover State Bank, 109 Kan. 776; Arnot v. Bingham, 55 Hun. 553; State Nat. Bank v. First Nat. Bank, 124 Ark. 531; In re City Bank of Dowagiac, 186 Fed. 250; Brown v. Sheldon State Bank, 139 Iowa, 83; Kansas State Bank v. First Nat. Bank, 62 Kan. 788; State v. Bank of Commerce, 61 Neb. 181; Paul v. Draper, 158 Mo. 197. (2) The relation between the sending bank and the collecting bank is one of principal and agent and the funds collected by the collecting bank are impressed with a trust in favor of the owner of the item collected, even though the item collected be one drawn on the collecting bank and collected by charging the item against the drawer's account, or it be an item payable at the collecting bank and is collected by a check drawn on the collecting bank. The trust in either case

follows the funds into the hands of the receiver in the event of the failure of the collecting bank before remitting the proceeds so collected, provided the following conditions exist: (a) That the item was forwarded for collection and remittance of the collected proceeds; (b) That the drawer of the check had sufficient balances with the collecting bank to authorize the item to be charged against his account; (c) That at the time the charge was made the collecting bank had sufficient funds available to honor the check; (d) That the bank which failed at the time the receiver took charge had sufficient funds to pay the amount so collected by the failed bank. Morse on Banking (5 Ed.) sec. 451; Midland Nat. Bank v. Brightwell, 148 Mo. 359; Hawaiian Pineapple Co. v. Brown, 220 Pac. 1114; Messenger v. Trust & Savings Bank, 187 N. W. 545; Goodyear Tire Co. v. Hanover State Bank, 109 Kan. 772; Kesl v. Hanover State Bank, 109 Kan. 776; Arnot v. Bingham, 55 Hun, 553; State Nat. Bank v. First Nat. Bank, 124 Ark. 531; In re City Bank of Dowagiac, 186 Fed. 250; Harrison v. Smith, 83 Mo. 210. (3) The principal and agent relation having been created under the original agreement by the terms of which the proceeds of the funds so collected were to be forwarded to the principal in currency or acceptable exchange was not changed to that of debtor and creditor by reason of the attempted remittance in uncollectible exchange. State Nat. Bank v. First Nat. Bank, 187 S. W. 673; Brown v. Sheldon State Bank, 139 Iowa, 83; Federal Reserve Bank of Richmond v. Peters, 123 S. E. 379. (4) The sending of the exchange draft on the First National Bank in attempted remittance for the collection so made was an effort to segregate and did set apart out of the funds in the First National Bank the amount represented in the draft under an assignment for the benefit of the Federal Reserve Bank of St. Louis. Daniels on Negotiable Instruments, sec. 1643, p. 1842; Federal Reserve Bank v. Peters, 123 S. E. 379; In re City Bank of Dowagiac, 186 Fed. 250; Raesser v. Nat. Bank, 112 Wis. 59; Hove v.

Stanhope State Bank, 138 Iowa, 39; McLean and Norbet v. Talkelson, 178 N. W. 42.

WALKER, J.—This is a suit brought by the respondent in the Circuit Court of Scott County against the appellant as Finance Commissioner of the State of Missouri in charge of the Bank of Oran, which failed and is now in process of liquidation.

The purpose of the action was to have certain funds in the hands of the commissioner in charge of the assets of the bank declared to be entitled to a preference over the claims of general creditors.

The case was tried to the court upon an agreed statement of facts. Plaintiff's claim was declared to be preferential and was allowed, and judgment rendered in its favor against the Bank of Oran, now in process of liquidation and in charge of the appellant, the Finance Commissioner. From this judgment he appeals.

The agreed statement of facts upon which the case was tried is as follows:

"That the Federal Reserve Bank is, and was at the times herein mentioned, engaged in the business of banking as defined in an act known as the Federal Reserve Act;

"That the Bank of Oran is and was at all times herein mentioned a state banking corporation engaged in the business of banking at Oran, Missouri;

"That the Federal Reserve Bank of St. Louis maintained no deposits nor kept any balance accounts with the Bank of Oran, and the latter bank maintained no deposits with nor kept any balance accounts with the Federal Reserve Bank;

"That the Federal Reserve Bank, under the Federal Reserve Act and the rulings of the Federal Reserve Board, is required to receive for collection and remittance all items collectible at par and payable in the district of the Federal Reserve Bank when such items are received from a member bank or another Federal Reserve Bank;

"That all member banks are required to clear at par items drawn on or payable at their bank when the collection is made through the Federal Reserve Bank;

"That any non-member bank is permitted, under an agreement acceptable to the Federal Reserve Bank, to have forwarded to it for collection and remittance all items drawn on or payable at such non-member bank;

"That at all the times herein mentioned there was in existence such an agreement between the Federal Reserve Bank and the Bank of Oran, by which the Federal Reserve Bank agreed to forward through the United States mail direct to the Bank of Oran all items coming through it for collection; and the Bank of Oran agreed that on the same day the item was received it would either collect and remit the proceeds or return the item, duly protested, the Bank of Oran to have the option of remitting by exchange acceptable to the Federal Reserve Bank, or by shipment of currency insured at the expense of the Federal Reserve Bank;

"That acting under this agreement, the Federal Reserve Bank did, on January 9th and 10th, 1924, respectively, forward by mail to the Bank of Oran its cash letters containing items drawn on or payable at the Bank of Oran, aggregating $2,393.59, indorsed for collection and remittance;

"That on January 10th and 11th, 1924, when these respective cash letters were received by the Bank of Oran, it collected the items by charging them to the respective drawer's accounts in the Bank of Oran. That on the same days it drew its drafts on its correspondent, the First National Bank in St. Louis, payable to the order of the Federal Reserve Bank of St. Louis for $1,733.43, and $659.15, respectively, and forwarded such drafts to the Federal Reserve Bank;

"The Federal Reserve Bank duly presented the drafts for payment and the same were refused because, in the meantime, the Bank of Oran had been closed and was in charge of the Commissioner of Finance for the purpose of liquidation. The drafts were duly protested and remain unpaid.

"That at the time the Bank of Oran collected the items referred to by charging the several amounts against the respective drawer's balance in the Bank of Oran, each of the respective drawers had more than sufficient funds to his credit in the bank than was necessary to sustain the charge;

"That at the time the items were collected, the Bank of Oran had in its vaults cash amounting to $4,475.31, and, with its correspondent, the First National Bank in St. Louis, on which the drafts were drawn, and subject to check, the sum of $14,906;

"That at the time the Bank of Oran was closed and taken over by the State Banking Department it had in its vaults, in cash, $2,326.66, and on deposit with the First National Bank in St. Louis subject to check the sum of $18,239.16;

"That the items listed in 'Exhibit (A.)' and on which claim was filed the item of $50.75, drawn by the East St. Louis Cotton Oil Company, in favor of Joe Gerst, and the item of $163.80, drawn by the East St. Louis Cotton Oil Company in favor of B. E. Harber, have been satisfactorily adjusted between the drawer and payee, and are to be eliminated from the $2,310.08 claimed as preferred, leaving a balance of $2,095.53, on which a preference is claimed."

Signed by the counsel of the respective parties hereto.

That a clearer understanding may be more readily had of the matter at issue an epitome of the foregoing facts are stated as follows: The Federal Reserve Bank of St. Louis forwarded to the Bank of Oran its cash letter containing items aggregating $2,392.59, to be remitted for in cash or in St. Louis exchange. The items were received by the Bank of Oran and the latter collected the same from the several drawers against their respective deposits, and in the case of drafts drawn against its depositors by the acceptance of the depositor's checks and the charging of the check against his deposits. The Bank of Oran attempted to forward the collections thus made by drawing its drafts on the First

National Bank in St. Louis in favor of the Federal Reserve Bank of St. Louis for the proceeds thus collected and forwarded the drafts to the Federal Reserve Bank. The latter presented said drafts to the First National Bank for payment, which was refused for the reason that the Bank of Oran had failed, and was then closed and in the hands of the State Banking Department for liquidation. The drafts were thereupon protested, returned to the liquidating agent and have not been paid.

There was no controversy over the separate items of this claim and the list of same attached to the petition is omitted.

There was no evidence other than as set forth in the foregoing stipulation, and it was upon this that the judgment for the plaintiff was rendered in the aggregate sum of these items, to-wit, $2,095.53.

This case was originally appealed to the Springfield Court of Appeals, in which the judgment of the trial court was affirmed, and the case was certified to the Supreme Court on the ground that the ruling therein was in conflict with the holding of the St. Louis Court of Appeals in American Bank v. People's Bank, 255 S. W. 943.

The ruling of the Springfield Court of Appeals was based upon a former opinion of that court in the case of the Bank of Poplar Bluff v. Millspaugh, 275 S. W. (Mo. App.) 579, in which the questions here seeking solution were, under a like state of facts, determined in favor of the plaintiff. Upon a certification of the Poplar Bluff Bank case to this court the opinion of the Court of Appeals was, in a well-considered opinion by BRADLEY, J. and adopted by WHITE, J., in all things affirmed, and it was held that the opinion of the Court of Appeals in the ruling in the Poplar Bluff Bank case did not conflict with that in the American Bank case, supra, in that in the latter it was shown that a reciprocal relation existed between the banks and not one of principal and agent. See 313 Mo. 412.

The same questions being involved in the Poplar Bluff Bank case as in the instant case it is not necessary

to the determination of the case at bar to do more than state with approval the ruling principles announced in that case.

I.   Here, as there, the facts disclose that no reciprocal accounts were kept between these banks, the respondent and the appellant.   Where a note, a check or a draft, is forwarded by one bank to another bearing a restrictive endorsement "for collection and remittance," under directions to collect and forward the proceeds to the sender, the relation of principal and agent is created and not that of debtor and creditor.   The funds thus collected are held to constitute a trust fund and entitled to a preference over the claims of general creditors.   When the relation existing between two banks, as in the case at bar, is that of principal and agent, the funds collected by the collecting bank for the forwarding bank become impressed with a trust in favor of the owner of the item collected.   This is true, although the item collected be one drawn on the collecting bank and it is collected by charging the item against the drawer's account, or if it be an item payable at the collecting bank and it is collected by a check drawn on it.   The trust in either case follows the funds into the hands of the receiver—in this instance, the Finance Commissioner—although the collecting bank may fail before remitting the proceeds collected, provided the following conditions exist: (1) That the item was forwarded for collection and remittance of the collected proceeds; (2) that the drawer of the check had a sufficient balance with the collecting bank to authorize the charging of the item to his account; (3) that at the time the charge was made the collecting bank had sufficient funds available to honor the check; (4) that the bank which failed had at the time the receiver took charge of same sufficient funds on hand to pay the amount it had collected. [Mid. Natl. Bank v. Brightwell, 148 Mo. 358; First Natl. Bank v. Sanford, 62 Mo. App. 394; Harrison v. Smith, 83 Mo.

*Principal and Agent: Trust Fund.*

210; Federal Reserve Bank v. Bohannan, 127 S. E. (Va.) 161; 2 Morse on Banking (5 Ed.) sec. 567, p. 227 and cases cited in notes.]

II. Further than this, the creation of the relation of principal and agent, under the original agreement, by the terms of which the proceeds of the funds collected were to be forwarded to the principal, in currency or acceptable exchange, did not change the relation to that
Change of Relation. of debtor and creditor by reason of an attempted remittance in uncollectible paper. The sending, therefore, of exchange drafts by the Bank of Oran on the First National Bank as an attempted remittance for the collection made, was indicative of a purpose to segregate or set apart out of the funds in the First National Bank the amount represented in the drafts under an assignment for the benefit of the Federal Reserve Bank, the respondent. [State Natl. Bank v. First Natl. Bank, 187 S. W. (Ark.) l. c. 674 and cases; Brown v. Sheldon State Bank, 139 Iowa, 83; Federal Reserve Bank of Richmond v. Peters, 123 S. E. (Va.) 379.]

III. In determining the relation which the Bank of Oran sustained to the Federal Reserve Bank no better test can be applied than the intention of the parties, as indicated by their conduct in this transaction. It is evident from the facts that the Federal Reserve Bank, in forwarding the items for collection to the Oran Bank,
Substitution. did not intend that the latter should use the proceeds arising therefrom in the usual course of business, but that they should be promptly forwarded to the Federal Reserve Bank. Under these facts the latter did not become a depositor, but having entrusted the items to the Oran Bank for a specific purpose, viz., collection, that bank became a trustee or agent for the truster or principal, the Federal Reserve Bank. This was the limit of the authority of the Bank of Oran. Its power, therefore, in the premises was specific, viz., to collect. However, the authority to do a thing, although

it may be specific, carries with it by implication whatever is necessary to accomplish the thing authorized, which was a prompt and proper remittance. Thus limited, however, it cannot be added to by implication and the relation of principal and agent destroyed by the substitution therefor of that of debtor and creditor. [Fed. Res. Bank of Richmond v. Peters, 123 S. E. (Va.) 379.] Such an attempted substitution was in no wise necessary to carry into effect the authority granted; nor did the mingling of the trust funds with those of the trustee change the relationship or defeat the owner's title. The effect of such a commingling of funds was simply to increase the total assets of the bank by the addition thereto of the funds sought to be converted. It is but equitable and just, therefore, that the general assets should bear the burden of the Federal Reserve Bank's preference.

IV. Furthermore, the giving of the drafts by the Bank of Oran on the First National Bank of St. Louis constituted an equitable assignment in favor of the Federal Reserve Bank for the amount of the drafts thus remitted against the funds then in the custody of the First National Bank or later turned over to the Finance Commissioner. This point has received determinative consideration in the case of the Federal Reserve Bank of Richmond, supra, in which it was said: .

Equitable Assignment.

"A check is not payment until the check is paid, and the drawing of a draft by the Prince Edward-Lunenburg County Bank to the order of the Federal Reserve Bank of Richmond and mailing the same to the last-mentioned bank in no way affected the trust already impressed. While the check was not an assignment of the fund against which it was drawn, as between the drawer of the check and the person who gave value for it, it was an equitable assignment of the fund pro tanto. [Daniel on Negotiable Instrs., sec. 1643, p. 1852.]"

The cases cited by the appellant may, upon an analysis of their respective facts, be distinguished from the

case at bar and from those referred to herein as sustaining the conclusion we have reached. We will, therefore, not burden this opinion with a review of same. Satisfied as to the justness of this claim, and of the correctness of the judgment of the trial court, the same is affirmed. All concur.