These are suits in equity to impress a trust upon certain funds in the American National Bank at St. Joseph, Missouri, in favor of the plaintiffs. The two cases were consolidated below and tried together, the facts and questions of law in both cases being identical. There is but one abstract of the record, and the statements and briefs cover both cases. On this review, the two cases will be considered together.
The material facts are not in dispute; hence the only question for consideration here is the application of the law to the facts and on this, of course, the parties do not agree. The cases were tried upon an agreed statement of facts, which because of its necessarily extended recitation, will not be set out in full, but a more abbreviated statement, including all the material facts will be used. These facts briefly stated are as follows:
On June 13 and 14, 1929, plaintiff (case No. 17001) the First National Bank of Auburn, Nebraska, presented certain checks to the Nemaha County Bank of Auburn, for collection, and on June 14, 1929, plaintiff (case No. 16997) Carson National Bank of Auburn, Nebraska, likewise presented certain checks to the Nemaha County Bank for collection. The Nemaha County Bank collected all of said checks by charging same against the deposit account of the respective drawers. For the collection so made, on June 13, 1929, the Nemaha County Bank, on that date, delivered to the First National Bank a sight draft in the sum of $1127.17, payable to it, and drawn by the Nemaha County Bank on the American National Bank of St. Joseph, Missouri. For the collections similarly made by it on the 14th day of June, 1929, the Nemaha County Bank, on that date, delivered to the First National Bank a draft for $4549.02, payable to it, and drawn by the Nemaha County Bank on the American National Bank *Page 950 
of St. Joseph, Missouri. For the collections made by it on June 14, 1929, for the Carson National Bank, the Nemaha County Bank similarly delivered a sight draft for $1446.17 to it, on the American National Bank. At the time the said collections were made and the said drafts delivered, the Nemaha County Bank was insolvent. On the dates named, the Nemaha County Bank had on deposit in the American National Bank at St. Joseph, Missouri, the sum of $11,659.12.
On June 15, 1929, Clarence G. Bliss, secretary of the department of trade and commerce of Nebraska, notified the American National Bank that on that day the Nemaha County Bank had closed its doors and that he had taken possession of the bank. A few moments after the receipt of this notification, the drafts were presented to the American National Bank, but payment was refused upon the ground that official notice of the closing of the Nemaha County Bank had been received. The Nemaha County Bank was indebted to the American National Bank in the sum of $21,866.24, evidenced by a promissory note, which at that time, had a credit of $1550. The said note was to mature on June 23, 1929.
On June 17, 1929, the vice-president of the American National Bank was informed by the cashier of the First National Bank of Auburn of the circumstances under which the drafts had been received. It appears the $11,659.12 remained to the credit of the Nemaha County Bank in the American National Bank until July 1st, at which time the latter bank applied the same on its note and charged the amount to the account of the Nemaha County Bank. It appears that as collateral security for the payment of said note, the American National Bank also held a number of notes aggregating about $29,000, and that said bank collected from the makers of these collateral notes an amount sufficient to pay the balance on the note executed by the Nemaha County Bank, after applying the $11,659.12 on deposit and leave $1179.09 to the credit of the Nemaha County Bank, and the collateral notes which remained uncollected in the hands of the American National Bank.
The Carson National Bank and the First National Bank of Auburn, Nebraska, instituted suits in the circuit court of Buchanan county, Missouri, against the American National Bank, to recover the amounts of their respective drafts. These suits were instituted and prosecuted upon the theory that the collections made by the Nemaha County Bank were the property of the claimants, and that the proceeds of the collections were a trust fund and that a trust was impressed upon the assets of the Nemaha County Bank wherever situated; and that the drafts drawn for the purpose of transferring to the respective plaintiffs the trust fund belonging to them, operated as an equitable assignment of the funds on deposit in the American National Bank. *Page 951 
Defendant, the American National Bank, answered, setting up the fact that the Nemaha County Bank was indebted to it, as stated above; that the Nemaha County Bank had on deposit in said bank $11,659.12; that to secure its indebtedness, the said defendant held collateral notes pledged to it by the Nemaha County Bank; that it applied said deposit of $11,659.12 on notes held by it and collected a sufficient amount of said collateral notes to satisfy the remainder due on said notes and leave $1179.09 cash in its hands, which said sum and the uncollected collateral notes defendant was holding "for further orders of the court, and the further disposition of the persons entitled thereto." The answer further pleads that on August 29, 1929, the district court of Nemaha county, Nebraska, appointed Clarence G. Bliss, secretary of the department of trade and commerce of Nebraska, receiver of the Nemaha County Bank; that said court is one of general jurisdiction and has full, complete and exclusive jurisdiction of the persons and the subject-matter of said suit in which the receiver was appointed, and had full and complete jurisdiction of the assets of the failed bank; that such receiver had made demand on defendant, claiming ownership and title to possession of $1179.09, balance collected on said collateral notes, and of the collateral notes remaining uncollected in the hands of defendant, and that the district court of Nemaha county, Nebraska, has full, complete and exclusive jurisdiction over said funds and notes; and said receiver further claimed that the circuit court of Buchanan county, Missouri, had no jurisdiction over the subject-matter of the suit. The answer further states:
"This defendant further states that it is holding said sum of $1179.09 and the remaining collateral notes, as aforesaid, for the persons lawfully entitled thereto, and that as said cash and notes are claimed by Clarence G. Bliss, receiver of said Nemaha County Bank of Auburn, Nebraska, as aforesaid, that the Nemaha County Bank of Auburn, Nebraska, and the said Clarence G. Bliss, should be required to intervene in this case, and that this proceeding should not proceed further until the said Clarence G. Bliss and the Nemaha County Bank of Auburn Nebraska, as aforesaid, are made parties defendant, and the court obtains jurisdiction over the said receiver and said bank.
"That substantial doubts have arisen as to the ownership of said funds, and notes, now held by this defendant, and that this defendant is desirous of delivering the same to the person, or persons, lawfully entitled thereto, and now tenders into court said sum of $1179.09 and said remaining collateral notes uncollected, for further disposition under the orders of the court herein."
The court made no order requiring the receiver to interplead. But the record shows the receiver voluntarily appeared and filed answer, in which a denial was made of plaintiff's allegations in the petition, *Page 952 
and an intervening petition was filed wherein it was alleged the Nemaha County Bank borrowed from the American National the sum of $21,866.24, and had deposited collateral notes to secure the same, which said notes were held by defendant bank with the right to collect them as they matured; that on June 15, 1929, the Nemaha County Bank had on deposit in defendant bank $11,659.12, and that said defendant bank claimed the right to offset the amount of its indebtedness to the Nemaha County Bank against the indebtedness of the Nemaha County Bank to it, and that the American National had in its hands $1179.09, and nine collateral notes belonging to the intervenor (describing them), aggregating approximately $21,000.
The intervenor then pleaded an act of the legislature of Nebraska providing that claims of depositors for deposits not otherwise secured, and claims of holders of exchange, shall have priority over all other claims, except federal, state and county taxes, of every bank, trust company and banking institution in the State of Nebraska, and, subject to such taxes, shall, at the time of the closing of the bank, be a first lien on all of the assets of the banking corporation, from which they are due, and thus under receivership, including the liability of stockholders and upon proof thereof they shall be paid immediately out of available cash in the hands of the receiver.
The intervenor further pleaded the laws of Nebraska, authorizing the department of trade and commerce of Nebraska to take possession of the property and business of any bank, if it should have reason to conclude such bank unsafe, etc., and that said defendant should thereafter conduct the affairs of the same and retain possession of all money, rights, credits, assets and property of every kind and description belonging to said bank, as against any means or final process issued by any court against said bank or corporation whose property has been taken, and retain such possession for a sufficient time to make an examination of its affairs and dispose thereof, as provided by law, and that any lien against such property, acquired within thirty days next preceding the taking of such possession, should thereby be released and dissolved.
The intervenor further pleaded the laws of Nebraska providing the district court of the county in which such bank was located should have power to appoint a receiver for said bank, and that after such a decree of insolvency was entered, all proceedings thereafter shall be had in said court, or before a judge thereof, with reference to the administration of said bank and the disposition of its assets.
The intervening petition further pleads that on the 14th day of June, 1929, the department of trade and commerce of Nebraska determined that the Nemaha County Bank was insolvent and that it was unsafe and inexpedient for said bank to continue in business, and that on the 14th day of June, 1929, said department took possession of all the business and property of said bank and ever since *Page 953 
has retained complete and exclusive jurisdiction thereof, including all notes and money due from defendant American National Bank of St. Joseph, Missouri; that afterwards, on the 5th day of August, 1929, the district court of Nemaha County, Nebraska, appointed intervenor as receiver of said bank, and the receiver thereby became vested with the assets of said bank, every kind and description —
"which were owned by said bank on the 14th day of June, 1929, and that said receiver thereby became entitled to all notes and funds in the hands of the defendant, the American National Bank of St. Joseph, Missouri, and that said district court of Nemaha county, Nebraska, thereby obtained exclusive jurisdiction to ascertain and determine all the rights of all persons in and to the assets of said bank as owned by said bank on the 14th day of June, 1929, and obtained full jurisdiction to determine the priority of each and all of the claims against said Nemaha County Bank of Auburn, Nebraska, and that this court has no jurisdiction of any kind or description, over the assets of the Nemaha County Bank of Auburn, Nebraska, in the hands of the defendant, the American National Bank of St. Joseph, Missouri, described in the pleadings in this cause."
The intervenor further pleaded that under the laws of Nebraska, whenever checks were delivered to a bank for collection and collected by it, the person delivering such checks for collection should have no right of priority over the depositors and other creditors of such bank, unless such items so collected increased the assets of said bank and augmented the assets thereof by transferring, or causing to come into the custody or ownership of said bank assets other than were owned by said bank at the time it shall have received any such check for collection, and even though it may be shown that such bank receiving any such collection item shall have received payment thereof, and even though such collection may have augmented the assets of said bank by the collection of such items, it shall not be allowed unless it shall be shown that the actual proceeds of the item thus collected shall be in the hands of the bank at the time the secretary of the department of trade and commerce took charge of said bank.
Upon the agreed statement of facts, the oral testimony of three witnesses in support thereof, together with necessary documentary evidence introduced, the court took the cases under advisement, later filing its decree; and still later, a decree was enterednunc pro tunc, including findings of fact and conclusions of law which were essentially the same in each case. In the original decree entered January 16, 1930, the court declared the fact to be that "The American National Bank applied and credited the sum of $11,659.12, on the said note of the Nemaha County Bank of Auburn," which holding was found to be in conflict with the stipulation of the parties. And on March 31, 1930, the court entered its nunc pro tunc order to correct *Page 954 
the alleged errors in the decree entered January 16, 1930; but in the nunc pro tunc entry it was found the American National Bank had not appropriated said sum of $11,659.12, or any part thereof, to the payment of said note of the Nemaha County Bank on June 15, 1929, when plaintiff's draft was presented for payment, and did not attempt to appropriate the same until the maturity of said note on June 23, 1929; and rendered a decree in the case that the issuance of the draft to the First National Bank of Auburn, by the Nemaha County Bank for $5,676.19, and to the Carson National Bank, issued by the Nemaha County Bank for $1446.17, constituted an equitable assignment of the funds in the hands of the American National Bank. The findings of fact by the court, other than as stated above, were in accord with the stipulation of facts upon which the case was tried. In the case of the Carson National Bank (No. 16997) against the American National Bank, the court rendered a judgment in the sum of $1446.17, being the amount of the draft drawn in favor of the Carson National Bank by the Nemaha County Bank, as above indicated; and rendered a decree in the case of the First National Bank (No. 17001) against the American National Bank for $5576.19, the total amount of the drafts; and also found against Clarence G. Bliss, intervenor.
Separate motions for a new trial filed by the American National Bank and the intervenor were overruled, and both have appealed from the orders and rulings of the court. Seven assignments of error are presented to us, namely: (1) That the court erred in exercising jurisdiction; (2) in deciding the American National Bank did not have the right to an offset; (3) in deciding that under the stipulated facts the American National Bank did not have the right to apply the money in its hands on deposit to the indebtedness of the Nemaha County Bank to it, so far as the Carson National Bank is concerned; (4) in overruling the motion for a new trial of the American National Bank; (5) in overruling motion of the intervenor for a new trial; (6) in holding the drafts given were equitable assignments of the money in the hands of the American National Bank, and in applying the law of Missouri to the cases, as to the right of plaintiffs to a priority and a lien against the funds in the hands of appellant bank, whereas it should have been determined solely by the laws of Nebraska.
The first point for review is that of the jurisdiction of the Buchanan county circuit court to hear the cases and render a decree therein. It is urged in this connection that the Buchanan circuit court obtained no jurisdiction over the funds in the hands of the American National Bank for the reason that on June 15, 1929, and prior to commencement of this suit, the secretary of the department of trade and commerce of Nebraska, having full power over and jurisdiction to take possession of any and all state banks in the State of Nebraska, *Page 955 
took possession of the assets of the Nemaha County Bank. (Citing sections 8023 and 8029 of the Laws of Nebraska, 1929, and a number of cases in foreign jurisdictions in support of this proposition.)
It is insisted the Nebraska laws should govern in determining the right of respondent bank to a lien on the fund, as the transaction out of which the drafts were issued occurred in Nebraska, and there was nothing which showed any intention of the parties at the time of the execution of the contract and the issuance of the drafts that the laws of Missouri should govern; that under the laws of Nebraska, the secretary of the department of trade and commerce was an officer of that state, having full power and jurisdiction to take possession of the assets of any insolvent bank of the State of Nebraska, and when such secretary took possession of the Nemaha County Bank on June 15, 1930, all assets belonging to said bank immediately passed to the custody of said officer who has exclusive possession; that the money and notes in the hands of the American National Bank, subject to the rights of the lien and offset of the latter bank, was a chose in action belonging to the Nemaha County Bank and, as such, had its location and situs in Auburn, Nebraska; that it was the duty of the secretary of trade and commerce of Nebraska to notify all banks and trust companies holding or in possession of any assets of the insolvent bank, when taken over by him; and it was provided under the Laws of Nebraska, 1929, section 16:
"No bank so notified, or knowing of such possession by the department of trade and commerce, shall have a lien or charge for any payment, advance or collection thereafter made, or liability thereafter incurred, against any of the assets of the bank of whose property and business the department of trade and commerce shall have taken possession."
From this hypothesis it is reasoned by defendants that the money and notes mentioned were not within the jurisdiction of the Buchanan circuit court, and that court was without right to hear and decide the case.
We are unable to accept this line of reasoning. In support of this position, defendants cite 12 C.J. 451, as a general rule in this respect, as follows:
"Where a contract is executed in one state and is to be performed partially in that state and partially in other states, it seems that the law of the place of making will control, in the absence of any other circumstances indicating the intent of the parties."
In applying this general rule it must be held that the last clause of the quotation states a limitation that applies here, i.e., "in the absence of any other circumstances indicating the intent of the parties." Here, we have an order or draft issued in Nebraska, directing a bank in Missouri holding its funds and notes, to pay certain amounts to the holders of the drafts. Can it be said that the performance *Page 956 
of the contract did not have its situs in Missouri where the funds were? We think not. The rule laid down in 5 R.C.L., pp. 936-937, states the case tersely, as follows:
"The Supreme Court of the United States has laid down the following rules in reference to the law governing contracts in cases in which the place of making and the place of performance are not the same. 1. Matters bearing upon the execution, interpretation and validity are determined by the law of the place where the contract is made; 2. Matters connected with the performance are regulated by the law of the place where the contract by its terms is to be performed; 3. Matters relating to procedure depend upon the law of the forum. These three general rules have been adopted and applied by many jurisdictions in a long list of cases involving almost every conceivable kind of contract. But it is even more generally stated when the contract is to be performed in a place other than the place where it is made that the law of the place where the contract is to be performed will determine the validity, nature, obligation and effect of the contract, or in other words, in case of conflict the lex solutionis will prevail over the lex locicontractus." (Citing a long list of cases from almost every state, among them, Smoot v. Judd, 161 Mo. 673, 61 S.W. 854.) In the Smoot case, VALLIANT, J., speaking for the court, said: "The law of the place where the contract is to be performed is the law of the contract." Defendants cite Illinois Fuel Co. v. Railroad,319 Mo. 899, 913, 8 S.W.2d 834, a recent case by our Supreme Court, in support of their contention. An examination of that opinion shows it to be authority for the statement that the jurisdiction in the present case is in Missouri. The learned author of that opinion cites 5 R.C.L., as above indicated. The same rule is stated in 8 C.J. 92, as follows:
"The place of performance of a bill or a note, that is, thelex loci solutionis, is the place of payment. Where a bill or note is executed in one state and made payable in another, the general rule is that it is governed as to its nature, validity, interpretation, and effect by the law of the state or country in which it is payable, without regard to the place where it was written, signed or dated, it being presumed that the parties contracted with reference to the law of that place," etc. [Citing Smoot v. Judd, supra; Commercial Bank v. Barksdale, 36 Mo. 563; Green v. Kennedy, 6 Mo. App. 577.]
We must hold the circuit court of Buchanan county, Missouri, had jurisdiction of both subject-matter and parties herein. The defendant American National Bank is located in that county and the subject-matter in question was there. The intervenor, receiver of the defunct bank, voluntarily submitted himself to the jurisdiction of the trial court and, in his petition, asked affirmative judgments in his favor and is now estopped to assert the Nebraska court alone had jurisdiction. Our attention is called to a case in the Nebraska courts *Page 957 
in which the Nemaha County Bank was involved (State ex rel. v. Nemaha County Bank, 231 N.W. 682), in which the above rule was upheld. We hold, therefore, the effect of the drafts, as a means of remitting the proceeds of collections made by the Nemaha County Bank out of funds in the hands of the American National Bank of St. Joseph, Missouri, is properly determined by the laws of Missouri. [Brown v. Worthington, 162 Mo. App. 508, 142 S.W. 1082.] Under the rules cited, the circuit court of Buchanan county, Missouri, properly exercised jurisdiction in this case.
It is insisted, under another assignment of error, that the court erred in holding the drafts held by plaintiffs, given to remit collections made by the failed bank, operate as an equitable assignment of the funds of the drawer bank in the possession of the drawee. We rule against defendants in this contention. The Supreme Court, in a very able opinion by WALKER, J., in the case of Bank v. Millspaugh, 314 Mo. 1, 12,282 S.W. 706, said:
"Furthermore, the giving of the drafts by the Bank of Oran on the First National Bank of St. Louis constituted an equitable assignment in favor of the Federal Reserve Bank for the amount of the drafts thus remitted against the funds then in the custody of the First National Bank or later turned over to the Finance Commissioner. This point has received determinative consideration in the case of the Federal Reserve Bank of Richmond v. Peters, 123 S.E. (Va.) 379, in which it was said: `A check is not payment until the check is paid, and the drawing of a draft by the Prince Edward-Lunenburg County Bank to the order of the Federal Reserve Bank of Richmond and mailing the same to the last mentioned bank in no way affected the trust already impressed. While the check was not an assignment of the fund against which it was drawn, as between the drawer of the check and the person who gave value for it, it was an equitable assignment of the fund pro tanto. [Daniels on Negotiable Instruments, sec. 1643, p. 1852.]'"
In that case the facts are very similar to those presented here. To the same effect is our holding in Johnson v. Bank,11 S.W.2d 1090. [See also Bank v. Millspaugh, 313 Mo. 412,281 S.W. 733; Bank of Callao v. Bank, 221 Mo. App. 385, 277 S.W. 613; Railway Co. v. Millspaugh, 220 Mo. App. 110, 278 S.W. 786.]
It is further insisted that the money and notes in the hands of the American National Bank, subject to lien and right of the American National Bank, constituted a chose in action owned by the Nemaha County Bank and not within the jurisdiction of the circuit court of Buchanan County. [Citing Richardson v. Busch,198 Mo. 174, 95 S.W. 894; State ex rel. v. Lewis, 256 Mo. 98, 165 S.W. 319.] We have examined these opinions and find therein no ruling in support of defendant's last contention. A chose is defined in 11 C.J. 759, as "a thing, suit; cause; personal property. It is a chattel *Page 958 
personal, and is either in possession or in action. The term is used in divers senses, of which the four following are the most important: Chose in action; chose in possession; chose local; and chose transitory." Under this definition, we think it may not be strictly held that the credit of the Nemaha County Bank is, in fact, a chose in action. While it may be held as a chose, it is not in action. But if it were a chose in action, which we need not decide, the issuing of the drafts in question, took the fund out of that classification, and impressed it with a trust, as above stated. The basis of defendants' contention in this respect is that if, in fact, the account is a chose in action, a partial assignment is not permitted under the law; but we hold the question of whether or not the fund in the hands of the American National Bank was a chose in action is not decisive here. We find that in this State there are two lines of cases dealing with the effect of a check or draft and the rights of the parties, which we hold not to be in conflict. The first line would seem, at first glance to support defendant's theory in this respect. Defendant bank seems to rely largely upon the ruling in Insurance Co. v. Cantley, 6 S.W.2d 970. This case follows the line of cases which hold, in effect, that if a check is drawn against the funds of the drawer deposited in the drawee bank, the check or draft does not operate as an assignment of such funds on deposit, unless the check or draft is for the entire amount. In that case, when one puts his money in a bank not impressed with a trust, it is the money of the bank and the relation of debtor and creditor is thereby created, and the creditor may not assign a part of the debt without the consent of the debtor. [Dickinson v. Coates,79 Mo. 250; Bank v. Coates, 79 Mo. 168; Loomis v. Robinson,76 Mo. 488, and McEwen v. Bank, 5 S.W.2d 702.]
However the situation is different where a bank as agent for another collects money belonging to the principal; or where a bank sells a draft receiving cash therefor and there is fraud in the transaction, in that if the issuing bank is known to be insolvent at the time and its officers have reason to believe payment of the draft will be refused, the money so collected remain the property of the principal or purchaser of the draft, the funds of the issuing bank in its own vaults, or in a correspondent bank are impressed with a trust in favor of the payee and the draft segregates sufficient of the funds to pay it. In other words, the draft operates as an assignment in equitypro tanto because it is drawn, not against the funds of the drawee, but against the funds of the payee. [Insurance Co. v. Cantley, 6 S.W.2d, l.c. 972; Bank v. Quigley, 284 S.W. 166, 167; Bank v. Quigley, 284 S.W. 166, 167; Bank v. Millspaugh,314 Mo. 1, 282 S.W. 706; Johnson v. Bank, 11 S.W.2d 1090; Railway Co. v. Millspaugh, 220 Mo. App. 110, 278 S.W. 786.] The distinction between the two lines of cases is readily seen. The trial court did not err in holding *Page 959 
the fund in the American National Bank was impressed with a trust in favor of the holders of the drafts; and we hold also that the fund in question was legally segregated. The receiver (intervenor) may not be heard to complain the trial court erred in ordering the payment of the drafts in question amounting to $7122.36, out of the $11,569.12, on deposit to the credit of the Nemaha County Bank. This is necessarily true because the receiver made no claim to any portion of said fund, as shown by the record. This disposes of the interpleader's objection in this respect.
There remains one other point for consideration. The defendant American National Bank contends it had the right to apply the funds in question upon the indebtedness of the Nemaha County Bank to it and that the exercise of this right defeats the claims of plaintiffs. The record shows, as above indicated, that the debt owing from the Nemaha County Bank to defendant American National Bank was not yet due when payment of the draft was refused. The testimony of witnesses is to the effect that the said note was dated March 23, 1929, due 90 days thereafter. Therefore it was not due on June 15, 1929, when the drafts were presented for payment, and, in fact, credit was not made on said note until after the same was due. Under the well-settled law of this State, even in cases of insolvency or general assignment for the benefit of creditors, there could be no offset as against him on a demand not yet due. [Huse v. Ames, 104 Mo. 91; Horigan Realty Co. v. Bank, 221 Mo. App. 329, 273 S.W. 772; Homer v. Bank, 140 Mo. 225, 41 S.W. 790.] In the case last cited, Judge BURGESS, speaking for the Supreme Court, said (l.c. 239):
"The universal doctrine is that a bank has no lien upon money standing to the credit of one of its depositors for an indebtedness to the bank not matured, although the depositor may be insolvent." [Citing cases.]
Under these authorities it follows that the American National Bank was without right to offset its note which was not yet due at the time the drafts in controversy were presented.
The court desires to compliment counsel for all parties litigant for the splendid briefs and clear arguments presented in this case. They greatly aided the court in determining the questions involved.
We find no reversible error of record, and the judgment in both cases is affirmed. Bland, J., concurs; Trimble, P.J., absent. *Page 960