IN THE MATTER OF HODIAMONT BANK, MEREDITH C. JONES, SPECIAL DEPUTY COMMISSIONER OF FINANCE, IN CHARGE, APPELLANT, v. ST. ROSE'S CHURCH, CLAIMANT, RESPONDENT.—91 S. W. (2d) 127.

St. Louis Court of Appeals. Opinion filed March 3, 1936.

Appellant's motion for rehearing overruled March 20, 1936.

*Lashly, Lashly & Miller* and *Arthur V. Lashly* for appellant.

*E. McD. Stevens* and *James E. King* for claimant-respondent.

BENNICK, C.—This is an appeal by Meredith C. Jones, the special deputy commissioner of finance in charge of the liquidation of the Hodiamont Bank, from the judgment and decision of the Circuit Court of St. Louis County awarding priority to the claim of St. Rose's Church in the amount of $15,000. Originally the appeal went to the Supreme Court, whence it was thereafter transferred to us, the actual amount in dispute, measured in terms of the difference between the value of the claim as a preferred and as a common claim, not being determinable from the record so as to show that it was an amount within the jurisdiction of the Supreme Court. [City of Doniphan v. Cantley, 330 Mo. 639, 50 S. W. (2d) 658; Consolidated School District No. 2 v. Gower Bank (Mo. Sup.), 53 S. W. (2d) 280; In re Central Trust Company of St. Charles (Mo. App.), 68 S. W. (2d) 919; In re Liquidation of Fidelity Bank & Trust Co. (Mo. App.), 77 S. W. (2d) 480; In re Sturdivant Bank (Mo. App.), 89 S. W. (2d) 89.]

It appears that for many years St. Rose's Church maintained a general checking account with the Hodiamont Bank, and that on January 3, 1933, which was the date of its attempted withdrawal of the amount of its present claim, it had to its credit a balance of $16,200 in its account.

It is conceded that on the day in question, Father John J. Fisher, the assistant pastor of the church, acting under the direction of the pastor, Father J. J. McGlynn, presented to the bank during regular banking hours a check properly drawn to "cash" in the sum of $15,000, and demanded payment of the same in cash. Father Fisher was referred to the president of the bank, one Charles C. Miles, who informed him that the bank did not have as much cash on hand as the check called for, and on that account offered to give him a cashier's check. Father Fisher insisted upon the cash or that the bank procure the cash for him, but upon the bank's refusal or professed inability to pay in cash, he finally took a cashier's check for the sum of $15,000, the same being made payable at Father Fisher's request to the Mercantile-Commerce Bank & Trust Company which was to be used by the church as its collection agent, and marked "acceptable for immediate availability at par through Federal Reserve Bank, St. Louis, Mo."

Following the giving of its cashier's check, the bank stamped the check of the church as "paid" as of that day, and thereupon entered

on its books a purported transfer of an item of $15,000 from the general deposit account of the church to the cashier's check account.

Upon receipt of the cashier's check, Father Fisher immediately turned it over for collection to the Mercantile-Commerce Bank & Trust Company, and it was thereupon started through regular banking channels for presentment for payment according to its terms. Whether it was presented on January 4th or January 5th is uncertain from the record, but it is conceded that it was not paid, and in fact that it never could have been paid, the free balance of the Hodiamont Bank with the Federal Reserve Bank at the time of the issuance of the cashier's check having been only $1,764.63.

Miles, the president of the bank, admitted that on January 3, 1933, when Father Fisher presented the check drawn to cash and demanded payment in cash, he knew that the bank was in failing circumstances and that its assets were frozen to the point where it could not hope to meet its liabilities. However it appears that the bank was nevertheless in a position to have honored the check of the church and to have paid Father Fisher in cash on the day of the presentment of the check, in that in addition to the free balance of $1,764.63 with the Federal Reserve Bank, it had, exclusive of its other liquid assets, the sum of $7,726.89 in cash in the till, and a further free balance of $9,167.47 on deposit with the First National Bank in St. Louis.

The bank continued to conduct its affairs in the usual manner until the close of business on January 4, 1933, when it closed its doors, and at the instance of its officers and directors was turned over into the hands of the commissioner of finance for liquidation.

At the outset of the case there arises a point of procedure upon which the appellant finance commissioner relies to defeat the court's award of priority of payment to the claim of the church.

We should perhaps point out that there is no question in the case about the fact of the due filing of the claim in suit with the commissioner, or that the church had at all times demanded that its claim be awarded a preferential status. Furthermore it appears that the claim was approved by the commissioner on September 18, 1933, though such approval neither served nor purported to serve the purpose of according priority to the claim inasmuch as the right to determine priorities is specifically denied the commissioner by statute. [Sec. 5336, R. S. 1929 (Mo. St. Ann., sec. 5336, p. 7560.]

Following the provisions of the above statute which not only denies to the commissioner the right to determine priorities but requires that he shall present his approved claims to the circuit court for its determination as to their priority of payment where priority is sought, the commissioner in this case, on September 23, 1933, filed with the circuit court a list of the claims theretofore approved by him in which priority of payment had been requested by the several claimants, and

prayed the court to designate a time when such claims would be considered by the court and to give the claimants due notice thereof to the end that they might appear and give evidence in support of their respective claims for priority. Suffice it to say that the claim of St. Rose's Church was duly listed in the commisisoner's report as Claim No. 394, which number had been assigned to it at the time of its filing and which it continued to bear throughout the entire course of the proceedings had below, having even been so designated and referred to in the text of the court's judgment in the case.

Conformably with the prayer of the petition thus filed by the commissioner, the court set the matter down for a hearing on October 14, 1933, and had its clerk so notify the several claimants, including St. Rose's Church; and on the day set, having evidently been unable to conclude its hearings, the court passed all further hearings, including the hearing on the claim in suit, to October 21, 1933.

On that date an amended affidavit in support of its claim for priority was filed in court by the representatives of the church, alleging the facts giving rise to its claim about as we have heretofore detailed them but with much greater particularity than in the claim as originally filed, and praying that its claim be allowed by the court. as a preferred claim.

Treating the filing of such amended affidavit as the institution by the church of the proceeding to have a preferential status accorded its claim, appellant argues that priority should in any event have been denied it upon the technical ground that the church failed to allege and prove the facts required by section 5337, Revised Statutes 1929 (Mo. St. Ann., sec. 5337, p. 7560), which were that the claim had been duly filed, and that sixty days had elapsed since the expiration of time for filing claims, and that its claim had not been approved by the commissioner. Concededly the amended affidavit included none of such averments, nor is there any contention that the claimant proved or attempted to prove any of such facts at the trial below, so that if section 5337 is to be held to have applied to the case, then appellant's present contention must be upheld, but otherwise not.

It seems entirely clear to us that section 5337 is 'definitely excluded by its own terms and provisions from any application to the prosecution by the church of its claim for priority of payment in the circuit court. So far as concerns the right granted a claimant by this section to institute and maintain an action or proceeding in the circuit court upon a claim theretofore filed with the commissioner, the section specifically limits its application to cases where the claim has not been approved by the commissioner. [Macon County v. Farmers' Trust Company of Macon, 325 Mo. 784, 29 S. W. (2d) 1096; State ex rel. v. Trimble, 333 Mo. 207, 214, 62 S. W. (2d) 756, 758; Johnson v. Farmers' Bank of Clarksdale, 223 Mo. App. 513, 11 S. W. (2d)

1090.] Here the claim of the church had been approved by the commissioner, that is, it had been approved as a legitimate common claim which was as far as the commissioner was permitted to go under section 5336; and having been so approved by him, but with a preferential status demanded for it by the claimant, it was therefore his duty to present the same to the circuit court, just as he did, for the court's determination of the question of its priority of payment.

Indeed on this appeal the appellant finds himself in the rather singular position of urging error in connection with proceedings which he himself instituted below in accordance with what he then stated in his petition to be his conception of the law having to do with the proper procedure to be followed in such matters, and our rejection of his present insistence regarding the failure of the church to have sustained the full burden of its pleading and proof is therefore of itself an approval of the course he elected to follow below. So we re-emphasize the fact that the claim in suit was properly brought by the commissioner to the circuit court for the determination of the question of its right to priority of payment, such right having been constantly asserted by the church from the very inception of the claim, and having been so brought to the court, the court's power to consider the merits of the claim was not in anywise affected by the subsequent filing of the amended affidavit which shows on its face that it was filed, not as the basis of an original proceeding upon a claim theretofore rejected by the commissioner as section 5337 would have contemplated and required, but instead as incidental to the one claim of the church already approved and reported to the court by the commissioner in accordance with statutory requirements and then pending before the court for its determination of the question of the right of the claim to priority of payment, which question it was that had required the presentation of the claim to the court by the commissioner.

This brings us then to the remaining point in the case of whether, under the particular facts of the case, the church was entitled to a preference for the amount of the cashier's check which Father Fisher accepted after his request for payment in cash was refused.

Of this we think there can be no doubt. When the check of the church was presented for payment the bank had more than enough available cash to have enabled it to pay it; and if the church had stood upon the bank's refusal to have made payment in the form and manner requested, there could now be no question about its right to a preference for the amount of its check. [In re Farmers & Merchants Bank of Center, Mo. (Mo. App.), 83 S. W. (2d) 198; Johnson v. Farmers' Bank of Clarksdale, supra.] What complicates the situation, if it may be thought to have been complicated, is the fact that Father Fisher finally yielded to the bank's insistence and accepted the cashier's check in purported payment of his own check;

and now appellant is contending that by virtue of Father Fisher's acceptance of the cashier's check the church is to be held to have waived what would otherwise have been its conceded preferential status upon the bank's refusal to have paid its check, and that its right to a preference is now to be determined solely in the light of its status as the purchaser of a cashier's check from the bank, unaffected by the fact that it had theretofore unavailingly demanded payment in cash in accordance with the tenor of its check.

We are indeed familiar with the doctrine that the purchaser of a bank draft or cashier's check will ordinarily acquire no right to a preference for the amount thereof upon the failure of the drawer or issuing bank before the ultimate payment of the draft or cashier's check, but such doctrine is of course to be taken along with the prime exception to it, which is that where there is fraud in the transaction, as where the drawer or issuing bank was known to its officers to be insolvent and in failing circumstances at the time so that its officers had reason to know and believe that payment of the draft or cashier's check would be refused, then the money so taken and collected from the depositor or purchaser will remain the latter's own property, and the funds and assets of the drawer or issuing bank either in its own hands or in the hands of those banks with which it has credit will be impressed with a trust in favor of the purchaser or payee as the case may be. [Bank of Republic v. Republic State Bank, 328 Mo. 848, 42 S. W. (2d) 27; St. Louis-S. F. Ry. Co. v. Millspaugh, 220 Mo. App. 110, 278 S. W. 786; In re Wells-Hine Trust Co. (Mo. App.), 32 S. W. (2d) 1093; Missouri Public Service Co. v. Cantley (Mo. App.), 57 S. W. (2d) 755; Blackshaw v. French (Mo. App.), 45 S. W. (2d) 916.]

Now this case is obviously not one where Father Fisher went to the bank to buy a cashier's check and obtained exactly what he requested, but instead it presents a situation where he requested and demanded cash for his check, and finally took the cashier's check only upon the bank's positive refusal to pay cash. Consequently it would be most unfair to determine the question of the present right of the church to a preference without any regard to what had gone before and had induced its acceptance of the cashier's check; and in considering the merits of the claim of the church for priority of payment we must necessarily give due consideration to the whole chain of events which constituted the transaction in question, beginning with Father Fisher's presentment of his check to the bank and his demand for its payment in cash and cash alone. When the case is so viewed, the right of the church to a preference seems clear in view of the admission of Miles, the president of the bank, that when the check of the church was presented to the bank he knew that the bank was then in failing circumstances; and no conclusion could hardly be

drawn from the evidence but that Miles knew that the cashier's check would not be paid when he prevailed upon Father Fisher to accept it, and that his purpose in doing so was merely to postpone the time when the bank would be finally compelled to close its doors and go into liquidation. So the case is one where the bank, with assets available to have paid the check of the church in cash, not only refused such payment but in fact defeated payment by fraudulently issuing the cashier's check in question, in view of all of which the church, on general principles of law alone, should be entitled to the preference it asks.

But there is still an added reason why we think the church should be allowed its preference, and that is by virtue of the provisions of the second subdivision of section 5575, Revised Statutes 1929 (Mo. St. Ann., sec. 5575(2), p. 7715), which is a part of the Bank Collection Code enacted in this State in 1929.

Such section provides that ''when a drawee or payor bank has presented to it for payment an item or items drawn upon or payable by or at such bank and at the time has on deposit to the credit of the maker or drawer an amount equal to such item or items and such drawee or payor shall fail or close for business as above, after having charged such item or items to the account of the maker or drawee thereof or otherwise discharged his liability thereon but without such item or items having been paid or settled for by the drawee or payor either in money or by an unconditional credit given on its books or on the books of any other bank which has been requested or accepted so as to constitute such drawee or payor or other bank debtor therefor, the assets of such drawee or payor shall be impressed with a trust in favor of the owner or owners of such item or items for the amount thereof . . . ., and such owner or owners shall be entitled to a preferred claim upon such assets. . . . .''

Here the Hodiamont Bank had presented to it for payment the check of the church, drawn upon and payable at such bank, and at the time had on deposit to the credit of the church an amount in excess of such item. Furthermore the Hodiamont Bank failed after having charged the amount of the check against the general account of the church, but without such item having been actually paid by the bank, either in money, or by an unconditional credit given on the books of the Federal Reserve Bank through which acceptance of the cashier's check was represented as being immediately available at par. Under such circumstances the statute itself provides that a trust should arise in favor of the church as the owner of the cashier's check and for the amount of it, and that the church should have a preferred claim upon the assets of the bank in connection with its liquidation. [Shell Petroleum Corporation v. Sturdivant Bank (Mo. App.), 87 S. W. (2d) 1064.]

It follows therefore that the judgment rendered by the circuit court should be affirmed; and the commissioner so recommends.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. The judgment of the circuit court is, accordingly, affirmed. *Hostetter, P. J.*, and *Becker* and *McCullen, JJ.*, concur.