MACK McQUERRY, RESPONDENT, v. BANK OF ELDORADO SPRINGS ET AL., APPELLANTS.—96 S. W. (2d) 515.

Springfield Court of Appeals. September 8, 1936.

· *J. E. Crook, Ralph B. Johnson* and *Herman Pufahl* for appellants.

*Neale & Newman* and *O. O. Brown* for respondent.

SMITH, J.—There is not much controversy over the facts in this case. It is a claim against the Bank of Eldorado Springs, in liquidation, wherein the plaintiff seeks to have his claim allowed as a preferred claim. He was successful before the circuit court and obtained a judgment on June 24, 1935, allowing his claim as a preferred claim for $1750.89, with interest at the rate of six per cent from the date of judgment. From this judgment the Commissioner of Finance appealed to this court.

The facts as shown by the record before us are substantially as follows:

The Bank of Eldorado Springs was a banking institution doing business at Eldorado Springs, in Cedar County, Missouri.

On October 21, 1932, the Mayor of the City of Eldorado Springs, issued a proclamation declaring a moratorium of this bank for the purpose of reorganization. The bank closed in pursuance to that proclamation and remained closed until November 28, 1932. On that date the bank reopened under a reorganization plan under which certain bad assets had to be taken out and were taken out. The depositors were asked to assign one-half of their accounts to three trustees, and an equal or like amount of the assets of the bank were taken out, and it was agreed that ten per cent of the remaining one-half of the deposit could be checked on by the depositor, and then at the end of ninety days five per cent more of the remaining one-half would be released so that the depositor could check on it

About eighty-five or ninety per cent of the depositors signed an agreement as above indicated, but the plaintiff, Mack McQuerry did not sign any agreement.

After the bank opened up on November 28, 1932, it accepted new deposits up until February 4, 1933, and did a general banking business except that it did not permit the old depositors to check out their accounts except as to ten per cent of the one-half and then five per cent after ninety days. While the plaintiff did not sign the agreement, yet on November 28, 1932, he did draw a check for $83.27, which was ten per cent of the one-half which was set apart. He did not draw out the other five per cent.

On February 4, 1933, the claimant wrote out a check as follows:

Eldorado Springs, Mo.,
Feb. 4th, 1933. No.....

BANK OF ELDORADO SPRINGS

Pay to Cash or Bearer ..............................$1,582.15
One Thousand Five Hundred Eighty-two and 15-100..DOLLARS
(Signed) MACK McQUERRY.

Pencil notation on check:
''Funds not available.''

The claimant testified that this was the only check that he presented. It was admitted that when the Commissioner of Finance and his deputy took over the bank on March 27, 1934, the following amounts were on hand:

Currency in vault ...............................$2,005.00
Silver in vault ................................. 1,045.00
Miscellaneous small change ........................ 8.71
Pennies ........................................... 64.75

Total ........................................$3,123.46

The witness testified that he presented the check to Miss Kent, the assistant cashier and that she referred him to Mr. Davis, the president of the bank. He said he presented the check and told her he wanted to draw the money and she referred him to Mr. Davis, the president of the bank and he took the check to Mr. Davis and said, "I want my money," and Mr. Davis said funds were not available and wrote on the check "Funds not available."

On February 8, 1933, the plaintiff filed suit against the Bank of Eldorado Springs for recovery of the bank deposit. The suit was returnable to the March term, 1933, Circuit Court of Cedar County, Missouri, at Stockton. In this suit plaintiff claimed that on October 21, 1932, he had on deposit the sum of $1,582.17; that on said date (October 21, 1932) he drew a check on the bank for that amount and that payment was refused. He asked for judgment for $1,582.17 and interest thereon from October 21, 1932, at six per cent per annum.

On May 26, 1933, the defendant bank filed an answer, and during the November term, 1933, judgment was rendered in favor of the plaintiff and against the defendant bank in the sum of $1,683.42, being the amount of the deposit ($1,582.17) with interest thereon from October 21, 1932, at the rate of six per cent per annum the interest amounting to $101.25. The judgment provided that execution should be stayed until the first day of the March term, 1934, unless within such time the defendant bank should be taken over in liquidation in which event the stay of execution should cease.

On the 1st day of the March term, 1934, the plaintiff sued out an execution against the bank but before the sheriff of Cedar County made any levy under the execution, the bank closed its doors and turned its assets over to the Commissioner of Finance of the State of Missouri.

After the bank was taken over by the Commissioner of Finance, the plaintiff filed his claim against the bank which was rejected by the Commissioner of Finance and thereupon within proper time the plaintiff filed his claim in the Circuit Court of Cedar County, at Eldorado Springs, and the case came on for hearing on plaintiff's claim for preference, and at a trial held on the 24th day of June, 1935, judgment was rendered allowing the plaintiff's claim for the sum of $1,750.89, which was the amount of the original judgment, $1,683.42 and interest thereon in the sum of $167.47, and the same was adjudged and allowed as a preferred claim, and the judgment further provides that it shall bear interest from the date of its rendition at the rate of six per cent per annum.

There was some controversy over the form of pleadings in the circuit court when this claim for preference was presented to the court, because of the fact that the Commissioner of Finance had not allowed the claim as an ordinary claim or as a preferred claim, but

the record before us shows the following stipulation, caption and signatures omitted.

"Now at this day comes plaintiff and Commissioner O. H. Moberly, by counsel, and agree in open court that the petition may be treated as original suit. Motion formerly filed by Commissioner O. H. Moberly to dismiss is withdrawn by agreement of counsel for plaintiff and defendant. This cause is ordered transferred on the original files to Stockton, Missouri, Circuit Court. Commissioner given until March 10, 1935, to plead."

The answer clearly states the defendants' position, and, caption and signature omitted, is as follows:

"Now come the defendants and for their answer to the plaintiff's petition admit that the Bank of Eldorado Springs is and was a banking corporation as alleged in plaintiff's petition.

"Admit that it closed its doors on or about the 27th day of March, 1934.

"Admit that O. H. Moberly is the Finance Commissioner of the State of Missouri, and John S. Pence is the special deputy commissioner of Finance and that as such they have charge of the assets of said bank; and deny each and every other allegation in said petition contained, and deny that plaintiff is entitled to a preferred claim.

"Further answering these defendants state that after plaintiff obtained judgment against the defendant Bank of Eldorado Springs, the plaintiff agreed that no execution issue on said judgment until the next regular term of the circuit court in which such judgment was rendered and obtained, and that by reason of obtaining such judgment and by reason of said agreement not to have any execution issued plaintiff became a general creditor and is not entitled to any preference and is not entitled to have his claim allowed as a preferred claim; and having fully answered, these defendants pray to be discharged with their costs."

There were several assignments of error set out by appellants, but we find the points set out in the assignments are considered by defendants as one point, for the matter is expressed in the printed argument, as follows:

"The question is can a depositor who has money on deposit in the bank go to the bank and make a demand and upon the refusal or failure of the bank to pay, bring a suit, recover judgment, including interest from the day of demand to the day judgment is rendered, have an execution issued to collect the judgment, and then after the bank closes its doors, file a suit against the Commissioner of Finance and obtain a preference not only for the amount of his deposit, but also for the amount of the interest from the time he made demand to the date that the judgment is rendered in the circuit court on the suit against the bank, and then later when he files his claim against

the Commissioner of Finance, recover interest again on the judgment from the date of its rendition to the date of the hearing of his claim against the commissioner.''

The record before us shows that the above question covers the point in this case. Both sides say that this presents an entirely new question under bank liquidations in this State. Maybe we can find some light in the general principles of law, and in the holdings of the courts in this and other jurisdictions on similar questions.

There were several points set out in appellant's brief, namely; (1) as to the introduction of evidence as to acts leading up to the judgment; (2) permitting plaintiff to amend his claim or petition changing the date upon which demand was made; and (3) in allowing claimant any interest on the deposit and especially interest up to the time of trial. According to the briefs of attorneys on both sides the above three points are not seriously considered by them. The principal contention of the appellant is stated as follows: ''Plaintiff was not entitled to preference. Plaintiff was an ordinary judgment creditor.'' As we read the contentions of the defendant all of them hinge on whether or not, when the plaintiff obtained his judgment in the circuit court before the bank closed and extended time thereon by consenting to a stay of execution under said judgment, he waived any right of preference if any he ever had, by pursuing such course. Or to put it another way, did the plaintiff by obtaining a judgment against the bank for the amount of his deposit and agreeing to an extension of time thereon for the enforcement of an execution waive any right he might have had for a preference? Did he by those acts place himself in the position of an ordinary creditor?

There is some controversy here between the parties as to whether the claim as filed in the circuit court was based upon the judgment as formerly obtained, or whether based upon the presentment of the check to the bank and its refusal to pay.

We have quoted in full the defendant's answer, which shows its contention with reference to the judgment and the stay of execution.

The petition, as shown by the Abstract of Record, after alleging the bank as a corporation, its closing its doors on March 27, 1934, the taking charge thereof by the State Finance Commissioner with the appointment of the special deputy to be in charge of the liquidation thereon, continues as follows:

''Plaintiff further says that on the 27th day of March, 1934, there was due and owing to him from the said Bank of Eldorado Springs, the sum of $1,726.61; that plaintiff is not now, nor has he been at any time mentioned in this petition, indebted to the said Bank of Eldorado Springs in any sum; and that neither the said bank nor the said Finance or Deputy Finance Commissioner are entitled to any credit or off-sets against plaintiff's claim against said bank.

"Plaintiff further states that on or about the 4th of February, 1933, the said Bank of Eldorado Springs was open for business and a going concern; that on said date plaintiff had on deposit in said bank the sum of $1,582.17, which was payable on demand, and all of which, less a 2-cent government tax per check, was subject to immediate payment of plaintiff's check drawn against said deposit and presented to said bank for payment.

"That on February 4, 1933, and during the business hours of said bank and while it was open for the transaction of business, and at and in said bank, this plaintiff presented for payment to the said bank his check for $1,582.15, payable to plaintiff, and that said bank wrongfully refused to pay the said check or any part thereof to plaintiff; that plaintiff then and there demanded payment to him of the sum of said $1,582.15 of and from the said Bank of Eldorado Springs, and payment was thereupon refused by said bank and by its employees and agents in charge thereof; that as a result of said refusal to pay said plaintiff the said sum of $1,582.15 the property and asset of the said Bank of Eldorado Springs, to the extent and value of the last named sum, were thereby augmented and so remained augmented to and until the said O. H. Moberly, State Finance Commissioner, took charge of said property and assets, and that such property and assets so augmented in the sum of $1,726.61 passed into the hand and possession of the said O. H. Moberly, State Finance Commissioner, and John S. Pence, Special Deputy Finance Commissioner, who now hold the same in trust for this plaintiff.

"This plaintiff further alleges that thereafter and on or about the 4th day of January, 1933, plaintiff filed suit against the said Bank of Eldorado Springs in the Circuit Court of Cedar County, Missouri, for the said sum of $1,582.17, representing said deposit, together with interest thereon, at the rate of six per cent per annum from October 21, 1932, and for costs; that defendant bank was duly and legally served with process in said cause and appeared by its attorney of record and filed answer therein; that thereafter and on or about the 13th day of November, 1933, judgment was rendered in said cause in favor of this plaintiff and against defendant bank in the sum of $1,683.42, together with $11.05 for costs; that no part of said judgment has been paid, but the entire amount thereof remains due and unpaid. That more than sixty days and less than six months have elapsed from the last date for filing claims to the date of filing of this action.

"WHEREFORE, this plaintiff prays judgment against the defendants and each of them for the said amount of $1,694.47, with interest at the rate of 6 per cent per annum from said November 13, 1933, and prays that the same may be allowed as a preferred claim

to be fully paid without proration among general creditors, out of the asset and property of the said Bank of Eldorado Springs, and for costs.

"O. O. BROWN,

"NEALE, NEWMAN & TURNER,

"Attorneys for Plaintiff."

It is clear to us that the above quoted part of the petition shows that the plaintiff obtained a judgment against the bank in the sum of $1,683.42 together with $11.05 for costs, aggregating $1,694.47, which was the exact amount asked as a preference in the prayer to his petition.

The position of the defendant on this point is stated as follows: "However, under any view of the case the plaintiff is not entitled to preference; having recovered judgment, and having agreed that no execution should issue, he waived whatever claim he might have had for preference."

There are some things in this case about which there can be no question. In the first place the plaintiff had on deposit in the bank, money which was originally a general deposit; second he issued a check for the amount making demand for the payment thereof, which payment was refused; third, it was admitted that there were sufficient funds on hand to pay the check when it was presented.

According to the holdings of the Missouri courts such facts entitled the plaintiff to a decree that he was entitled to a prefererence on his claim. [Johnson v. Farmers Bank of Clarksdale (Mo. App.), 11 S. W. (2d) 1090, 1091 and cases there cited; In re Hodiamont Bank, 91 S. W. (2d) 127, 130; In re Farmers & Merchants Bank of Center Mo., 83 S. W. (2d) 198; Bank of Illmo v. Sturdivant Bank, 89 S. W. (2d) 560, 563, and cases there cited.]

There are some other facts in this case that make this one more difficult of determination. Assuming that at the time the check was presented and payment refused, that plaintiff was then entitled to a preference, as we must assume if we follow the holdings in the above cited Missouri cases, what effect did the obtaining judgment against the bank and the stay of execution thereon have on the nature of the claim?

We think it may be said that in many of these claims for preference the question depends largely upon the acts and conduct of the parties interested, and an ordinary claim may be changed into one of preference, and a preferred claim may be changed to an ordinary claim through the acts of the parties. "Like all contracts, it grows out of the mutual intention and understanding of the parties." [3 R. C. L., sec. 146, p. 517; 7 C. J., sec. 306, p. 630.]

The record shows that the claimant was diligent in every way in

trying to collect his money, unless it was in consenting to a stay of execution from the date of his first judgment in November, 1933, to the first Monday in March, 1934, and, as we view it in the light of Missouri decisions, we must hold that he was entitled to a preference, unless his conduct was such as to justify our holding that he, by consenting to the stay, waived his right to a preference. The answer alleges that ''the plaintiff agreed that no execution issue until the next regular term of the circuit court.'' The judgment of the circuit court, which was rendered on November 15, 1933, with reference to the stay of execution provided as follows:

''It is further ordered and adjudged by the court that execution shall be stayed on this judgment until the first day of the March, 1934, term of this court, unless within such time the defendant bank shall be taken over in liquidation, in which event this stay of execution shall cease upon the happening of such event.''

Even though this claim be held as one based on a judgment into which all prior acts and transactions were merged, we think the above provision of the judgment with reference to the stay granted was competent evidence in the hearing for a preference to show the understanding of the parties as well as the trial court with reference to the condition of the bank as it limped along to the final crash. Nor do we think it was error for the trial court to admit in evidence the refused check presented to the bank, with the notation ''Funds not available'' written thereon by the president.

There is no question but that as a general rule all causes of action whether on contract or sounding in tort are merged in the judgment. [State ex rel. Emmerson v. Mound City (Mo.), 73 S. W. (2d) 1017, and cases therein cited.]

There was some controversy between the attorneys in this case at the trial, as well as on appeal, as to whether this is a claim based on a judgment, or a claim for preference based on the presenting of the check to the bank and the refusal of payment. When this question was presented to the trial judge, he said:

''The court is proceeding with this trial, as stated before, on the theory that the action itself, if based upon anything, is based upon the judgment, not upon a check, not upon anything else, except the judgment, and they are asking this court to find the amount they are entitled to on that judgment, if anything, and after so finding they are asking this court to give them a preference, and we have allowed the matters that are now in evidence and the records and papers and documents now in evidence in support of plaintiff's contention that they are entitled to a preferred claim.''

Taking the theory of the trial court as above quoted, the testimony of the presentation of the check with the refusal to pay, and the

evidence of sufficient funds being on hand with which to pay, was admitted for the purpose of showing the nature of the debt included within the judgment.

While the judgment, as a general rule, would be all that was necessary in establishing a general claim, yet we think there are circumstances surrounding the debt that may be taken into consideration with reference to the claimant's rights under the judgment. It is our conclusion that the trial court did not commit error in admitting evidence as to the nature of the claim constituting the judgment. As showing the reason for so admitting the evidence, as to the nature of the claim the trial court said:

"BY THE COURT: In view of the fact that at the time the plaintiff in this case reduced his claim to judgment, and that such judgment, whether it disclosed it was for a deposit or on any other account, would have justly and rightly been a common claim which should have been allowed in the first instance, if a subsisting claim, as the evidence in this case shows that it was, the court feels that the court should find on the record of the judgment itself that the amount claimed by the plaintiff is due plaintiff in this case; that then the question for the court to determine is whether he should allow plaintiff's claim as a preferred claim or let the claim stand only as a common claim, as it appears from the evidence and also from the face of the judgment itself, introduced in evidence, that the judgment was based upon a deposit in the bank, and as it further appears from the evidence introduced in evidence that a check was drawn on the funds of plaintiff in said bank on the 4th day of February, 1933, and also appears on the face of the judgment that demand for the money of plaintiff so on deposit in said bank was made on the 21st day of October, 1932, and as it seems to the court that the only materiality of the matter of demand for the payment of the money to the plaintiff by the bank is for the purpose of enabling the court to determine whether or not this claim should be allowed as a common or a preferred claim, the court will treat the matter as not constituting a case in which oral evidence is introduced for the purpose of contradicting a written instrument, but introduced for the sole purpose only of enabling the court to determine whether at any time plaintiff made such demand as would entitle him to a preference and, in view of the fact that the court finds he did make such demand of the bank, and that the proof shows there was sufficient funds on hand in the bank at the time such demand was made to have paid the check of the plaintiff, the court finds that the plaintiff is entitled to a preferred claim."

We think the trial court had a right to go behind the judgment in order to ascertain the nature of the debt, for the judgment does not destroy the debt or destroy its character as evidence. [34 C. J., p.

754.] We think the equities sustain the holding of the trial court in this matter. Under all the Missouri decisions when the claimant presented his check and made demand on the bank for payment while the bank was a going concern and had the money on hand to pay, and the bank refused to pay, those conditions entitled him to a preference. That has been definitely determined by the courts of this State. There would have been no question about it under the Missouri decisions if the bank had failed then and a commissioner had taken charge of the bank. But the bank was still going and did go for several months thereafter. What was the claimant to do—was he to stand by and take no action? He filed suit and obtained judgment— was there anything wrong about that? He did wait four months before levying an execution. Did that fact change the nature of his debt? Did that fact injure any of the other parties interested in the bank? There is no attempt to show that it did. We can conceive of no way where his conduct in waiting hurt anyone. Suppose he had waited and not obtained a judgment after payment of his check had been refused, and the bank had closed its doors, as it did, would anyone contend, under the holdings in this State, that he would not have been entitled to a preference? We think not, and we think he did not waive any right that he had by obtaining the first judgment, and that the trial court did not err in admitting evidence as to the nature of the debt embraced within the judgment.

The judgment should be affirmed. It is so ordered. *Allen, P. J.*, and *Bailey, J.*, concur.